[S. F. No. 3825. In Bank.—November 9, 1904.]

## WILLIAMS, BELSER & CO., Appellants, v. CARRIE L. ROWELL, Respondent.

CONSTRUCTION OF PART .OF SEWER—PRIVATE CONTRACT BY LOTOWNERS— CONSTRUCTION OF CODE—ENFORCEMENT OF LIEN — JURISDICTION.— A system of sewers is an improvement to lots within the sewer district, and where the lotowners within part of a sewer district established by a town made a private contract for the construction of the sewers according to the proper plans and specifications of the town, in proportion to frontage on their lots, the contractor has a lien under section 1191 of the Code of Civil Procedure upon each lot for the price which the owner has agreed to pay therefor, which the court has jurisdiction to enforce, regardless of the amount thereof. [Shaw, J., and Angellotti, J., dissenting.]

ID.—PLEADING—AMBIGUITY AND UNCERTAINTY—GENERAL DEMURRER.— Ambiguity and uncertainty in a pleading are not available upon general demurrer, and can only be taken advantage of by special demurrer.

APPEAL from a judgment of the Superior Court of Alameda County. W. E. Greene, Judge.

The facts are stated in the opinion of the court.

J. C. Bates, for Appellants.

John W. Stetson, and James G. Quinn, for Respondent.

BEATTY, C. J.—In this case the superior court sustained a general demurrer to the complaint, and, upon the plaintiffs declining to amend, entered a final judgment for the defendant, from which plaintiffs appeal. It appears from the complaint that the board of trustees of the town of Emeryville adopted a plan or system of sewers for the town, and that the plaintiffs entered into a written contract with the defendant and other lotowners by which they agreed to furnish the material and construct the whole system, together with the necessary Y branches, manholes, lampholes, etc., according to the plans and specifications of the town engineer as approved by the board of trustees, and to the satisfaction. of the engineer and said board; that the defendant and other

owners of lots upon their part agreed in consideration of the performance of this contract to pay to the plaintiffs the sum of forty-five cents per front foot, according to their frontages set down with their signatures to the contract and representing the amounts of their individual frontage directly along the lines of the proposed sewers. It was stipulated that said rate of forty-five cents should include all manholes, lampholes, inspectors' and engineers' fees, and all incidental expenses, and also all work on crossings. But the respective lotowners were to pay for as many Y branches as they indicated in connection with their signatures, at the rate of a dollar and fifty cents each. The defendant was the owner of a lot fronting 129.57 feet on Auburn Avenue and the same length on Lulu Avenue, and she as the owner of said lot agreed to pay for the work done under the contract, $58.18 for 129.6 feet front at forty-five cents, and $4.50 for three Y branches, or a total amount of $62.68. The plaintiffs duly performed their contract, but defendant has failed to pay, and they seek in this action to enforce a lien against her lot for her share of the agreed price of the work and for costs, etc.

Defendant's demurrer was general, for want of facts and lack of jurisdiction, and if it was rightly held by the superior court that plaintiffs had no lien to be foreclosed, the amount claimed under the contract was too small to give the superior court jurisdiction. The main, and in fact the only, question, therefore, which we have to decide is whether there was a lien. It is true the respondent makes some claim that the complaint does not show that the sewer was constructed in front of her lot, and it is true that in this respect the complaint is ambiguous and uncertain, but this was a defect that should have been pointed out by special demurrer. As against a general demurrer for want of facts, we think the complaint may be held to show with sufficient certainty that the sewer was laid for 129.6 feet in front of the defendant's lot, and that three Y branches were placed in that part of the sewer for her accommodation. (Though as to this matter of Y branches it is immaterial whether the complaint shows a lien or not; they were separately provided for by a severable clause in the contract, and if the complaint established a lien for that part of the contract price determined by the frontage, it was error to sustain the demurrer.)

We think that the superior court erred in holding that there was no lien. By section 1191 of the Code of Civil Procedure it is provided that "Any person who, at the request of the reputed owner of any lot in any incorporated city or town, grades, fills in, or otherwise improves, the same, or the streets or sidewalks in front of or adjoining the same, or constructs any areas, or vaults, or cellars, or rooms, under said sidewalks, or makes any improvements in connection therewith, has a lien upon said lot for his work done and materials furnished."

A system of sewers is an improvement to the lots within the sewer district. This is clearly recognized in the provisions of the Vrooman Act relating to sewers. From its first enactment in 1885 (Stats. 1885, p. 161, sec. 24) through all its amendments (Stats. 1887, 1889, 1891, 1895, *passim*), city councils have been fully empowered to order the construction of sewers, in defiance of any protest of property-owners and at their expense. They have power to define sewer districts, including the property which in their judgment will be benefited,—i. e. enhanced in value by the proposed work,— and to assess the whole cost, including all incidental expenses, upon the property so benefited, thereby creating a lien upon each lot for the amount of its assessment. (Stats. 1885, p. 162, sec. 27.) The power to subject each lot within an assessment district to a lien for its due proportion of the cost of street or sewer work rests solely upon the assumption that the lot is improved,—i. e. enhanced in value in an amount at least equal to its assessment,—and accordingly it is held that the lot alone is liable, the owner being free of any personal liability. (*Taylor* v. *Palmer*, 31 Cal. 254.) There is no difference in this respect between the construction of a sewer and the improvement of a street, except in the wider latitude of discretion given to the city council in determining what property will be benefited, and the mode of apportioning the cost. Assessment according to frontage in this and other cases is only a mode more or less equitable, according to circumstances, of making the apportionment, but, whatever the mode adopted, the several assessments, if lawfully made, represent in legal contemplation the improvement to the several lots, and are a lien thereon.

Now, in this case it appears that the trustees of Emeryville

had adopted a system of sewers *for the town* upon plans and specifications recommended by the town engineer. This manifested their intention to order the work, let contracts, and assess the cost of the whole work with all its incidents ratably upon the lots within the town. In this situation the defendant and other lotowners agreed to assess themselves for their ratable share of the expense. Knowing that they would be subjected to no personal liability if the improvement was carried out by proceedings *in invitum,* but that their lots would be charged with the expense according to an assessment to be made, they voluntarily entered into an agreement by which they assessed themselves for what each must have deemed his fair share of the expense, or, in other words, the amount of the improvement to his particular lot. It is true that it is not shown that all lotowners in the town joined in this agreement, and it is highly probable that some of them did not. In cases of this kind there are generally found a few individuals who are willing to shift their own burdens to other shoulders, and no doubt the parties to this contract took that into consideration. They may be trusted, however, to have concluded that on the whole it would cost each of them less to have the work done under this contract than to have it carried out under compulsory proceedings by the board of trustees. They were looking out for their own interests, and no doubt they took proper care of them. They secured the improvement of their lots upon terms which they voluntarily accepted in place of the terms which they apprehended might be imposed upon them.

. This being so, they are brought within the letter and spirit of the law above quoted. The plaintiffs improved their lots at their request, and their claim of lien is for no more than the agreed value of the improvement. The fact that the contract price included the general and incidental expenses of the system, as well as the cost of the branch sewers in front of the respective lots, is no impeachment of this statement. When a system of sewers is constructed under the orders of a city council in the usual way, all these expenses are apportioned to the several lots and become a part of the whole amount secured by the lien. And justly and reasonably so. A branch sewer laid in front of a lot but unconnected with a main or outfall sewer would be simply a nuisance. To make

it a real improvement it must be connected with other parts of the system, and the main sewers must be furnished with the means of cleansing, ventilation, and inspection, such as manholes, lampholes, etc.  Street-crossings must also be restored where the sewers are laid, and the labor and services of the official engineers and inspectors must be compensated by the contractor.  These costs, appertaining to the whole system, and essential to its existence and efficiency, must be apportioned, and whether they are assessed by the superintendent of streets in the usual way or apportioned by voluntary agreement of the lotowners according to frontage or by some other method, the share apportioned to each lot is to be deemed a part of the price of the improvement to that lot, and if so it is a lien thereon.

The complaint, in our opinion, sustains the claim of lien, and the superior court had jurisdiction to enforce it.

The judgment is reversed.

Henshaw, J., McFarland, J., and Lorigan, J., concurred.

SHAW, J., dissenting.—I dissent.  Section 1191 of the Code of Civil Procedure is a part of the chapter of that code relating to mechanics' liens.  The provisions conferring a lien upon a lot for work done in connection therewith in the adjoining street were first incorporated into this section by the amendment made in 1885.  There is much ground for the contention that there was no intention by this amendment to give a lien upon the lot for any work except for private improvements made for the benefit of the particular lot.  It is a great stretch of construction to hold it applicable to public improvements such as a public sewer composing part of a general system for the town or city.  But for the purposes of this case it may be conceded that in a proper case, where the owner of a lot requests the construction of a public sewer in the street abutting upon the lot, the lot would, under this section, be subject to a lien for its proportional part, according to frontage, of the total cost of the sewer constructed at the owner's request.  If by the complaint in this action it had been made to appear either that all of the owners of lots fronting upon the proposed system of public sewers had joined in the contract employing the plaintiffs to construct

the sewer, each agreeing to pay his proportion of the cost of the entire work, or that the defendant and the other property-owners who did join in the contract had each agreed to pay only that portion of the entire cost of the system which would be properly chargeable to his particular lot upon an apportionment of the total cost according to frontage, then it would follow, under this construction of the section, that each lot would be subject to a lien for such proportional amount of the cost. But that is not this case. It is alleged that the defendant and other property-owners employed the plaintiffs to construct the sewer according to the plans and specifications adopted by the town trustees, and to the satisfaction of the town engineer and board of supervisors, but it does not appear that the property-owners thus employing the plaintiffs comprised all the owners of lots abutting upon the proposed system of sewers. It further appears that each agreed to pay for the construction of the proposed system a sum equal to forty-five cents per front foot upon his particular frontage, but it is not alleged that this sum was the proportional part of the entire cost which would be chargeable to the particular lot if an apportionment were made according to frontage.

There can be no presumption that such was the case. It must be conceded that if these facts are necessary to give the plaintiffs a lien for the amount they claim, it was incumbent upon them to show them by proper allegations in the complaint. The result is, that, so far as appears from the case made by the complaint, the lien is imposed upon the lot of the defendant for a portion of the total cost of the system of sewers, which bears no relation whatever to the cost of the portion of the sewer in front of the lot, or to its proportional part of the entire cost estimated according to frontage. The mere fact that the contract provided for a certain amount per front foot is of no consequence to the proposition. The sum agreed to be paid by each was entirely arbitrary, and, so far as it has any bearing upon the merits of the question, it could as well have been determined by any other method or by stating the exact sum which each agreed to pay, without regard either to frontage or to the total cost. In any system of sewers for a town there would usually be numerous branch sewers entering into the main sewer at different points along

the line and intended to serve the purpose of drainage for lots fronting upon the side streets. It does not appear from this complaint whether the defendant's lot abutted upon the street in which the main sewer was laid or upon some side street upon which only a branch was laid. But in either case branch sewers which did not abut upon this lot would be of no benefit whatever to the lot. As there is nothing to show that such was not the case, and as under ordinary circumstances there would be such branch sewers, it must be presumed in this case that such were in existence. A lien is therefore charged against the defendant's lot for a sum, of which a part at least is for that part of the sewer made for the benefit of other lots, and for the city in general. The effect of the decision is, that in a case where a few lotowners contract for the construction of a public sewer or system of sewers for the town, and agree to pay some part of the contract price, there will be a lien imposed by this section, in favor of the contractor, upon the lots owned by each contracting owner, for the amount which he has agreed to pay upon the contract price, regardless of whether such amount is or is not the ratable proportion of the total cost chargeable to his lots, and regardless of whether it really goes in part to pay for portions of the sewer beneficial solely to other lots than his own. It would thus practically impose upon his lot a mortgage for a benefit conferred upon another. In my opinion, section 1191 was not intended to have such effect.

In so far as the majority opinion assumes that the amount each owner agreed to pay in this case was his ratable share of the whole expense, apportioned by frontage, it is without support from the facts alleged.

Angellotti, J., concurred.