[Civ. No. 922.    Second Appellate District.—July 28, 1911.]

CALIFORNIA PORTLAND CEMENT COMPANY, a Corporation, et al., Respondents, v. WENTWORTH HOTEL COMPANY, H. S. McKEE, Assignee in Insolvency Thereof, Appellant, and A. T. HAGAN COMPANY, PACIFIC COAST PLANING MILL COMPANY, and YARD & HICHBORN, Appellants in Consolidated Cases.

MECHANICS' LIENS—CONSOLIDATED ACTIONS—IMMATERIAL VARIANCE BETWEEN COMPLAINT AND FINDINGS—UNRECORDED CONTRACT—PURCHASING AGENT—OBJECTION NOT URGED.—In a consolidated action to foreclose mechanics' liens, a variance between the complaint of one lien claimant alleging an unrecorded contract with the owner and proof and findings that the alleged contractor was merely a purchasing agent of the owner is immaterial, where no objection was raised to the introduction of evidence to prove the true relation between the parties on the ground of such variance.

ID.—PRESUMPTIONS UPON APPEAL FROM JUDGMENT.—When the appeal is from the judgment alone, it must be presumed that the evidence is sufficient to sustain the findings of the court, and that no objection was made to the introduction of evidence to prove them.

ID.—RULE OF PRACTICE—WAIVER OF OBJECTION NOT URGED TO VARIANCE. It is an established rule of practice that where a party desires to raise a question as to any variance between the allegations of a pleading and proof offered at the trial, such objection must be presented in the trial court, else it is waived and cannot be urged upon appeal.

ID.—LIENS FOR MATERIALS NOT USED IN BUILDING NOT ALLOWABLE—STOPPAGE OF WORK BY OWNER.—Where the work is stopped by the owner, no liens can be allowed for materials not actually used in the building, though they may have been specially prepared for such use.

ID.—CONSTRUCTION OF CODE—ABANDONMENT BY CONTRACTOR—STOPPAGE BY OWNER.—Section 1200 of the Code of Civil Procedure is designed to provide a method whereby the extent of the liability of the owner, under his building contract, may be ascertained when the contractor abandons the work, and does not apply when the owner voluntarily causes the work to be stopped.

ID.—MANUFACTURED MATERIALS—VENDORS CHARGEABLE WITH KNOWLEDGE OF LAW AS TO LIENS—PERSONAL LIABILITY OF OWNER.—The fact that some of the materials were specially manufactured for use in the building cannot affect the law as to liens upon stoppage of the structure by the owner. The vendors of the manufactured materials are chargeable with knowledge of the law as to liens, where the work is stopped by the owner. The only right of action in such case is a personal one against the owner.

ID.—NOTICE OF LIEN—FAILURE TO RECITE OFFSET—WILLFUL INTENT TO DECEIVE NOT SHOWN.—The failure of a notice of lien to recite an offset or credit on account of unused labor and materials against the contract price, occasioned by a change in the original plan of construction by the owner, is not fatal to the lien, in the absence of proof of a willful intent on the part of the claimant to assert what he knew to be false, especially when the offset is a small part of the whole contract price agreed to be paid, and the credit was deducted by the court.

ID.—CONSTRUCTION OF CODE—PENAL PROVISION.—The provision of section 1202 of the Code of Civil Procedure that "any person who shall willfully include in his claim, filed under section 1187, work or materials not performed upon or furnished for the property described in the claim, shall forfeit his lien," is penal in character and must be strictly construed.

ID.—EVIDENCE REQUIRED TO SHOW FORFEITURE.—The evidence must be clear and convincing that a violation of the statute was willful and intentional, before a court will take away the right of the claimant to a lien under section 1202 of the Code of Civil Procedure.

ID.—STATUTE AS TO CLAIMS OF LIEN REMEDIAL—LIBERAL CONSTRUCTION. The statute as to claims of lien is remedial in its character, and

is to receive a liberal construction; and the notices which under its provisions are required to be given have regard to substance rather than to form.

ID.—CONTRACT TO FURNISH ELEVATORS—MATERIALS EXCEEDING THOUSAND DOLLARS—RECORDING NOT REQUIRED.—A contract to furnish elevators, as materials to be inserted in the building, for a sum exceeding $1,000, is not to be deemed a contract for construction; and the statute requiring building contracts which provide for a payment of more than $1,000 to be recorded does not apply to such contract.

ID.—PROPER LIEN FOR ELECTRIC WORK DONE.—Where the electric work was to be paid for according to the amount done in a six-story building, and the notice of lien therefor correctly stated the amount of electric work actually done, and stated the completion of the work done, "according to contract," but which was so completed when the building was stopped by the owner at the fourth story, and was then accepted as complete by the owner, the lien was properly allowed for the work actually so done.

ID.—LIEN FOR GRADING AND IMPROVEMENT OF HOTEL LOT—ORNAMENTAL MATERIALS.—A lien was properly allowed for the grading and improvement of a hotel lot, and for the furnishing of trees, shrubs, plants, flowers, seeds, bulbs, etc., to be used in making such improvements, at cost, and at the cost of the labor employed, besides the agreed price for such improvements.

ID.—CONTRACTS OF MATERIALMEN UNRECORDED.—Contracts of materialmen for labor and materials in excess of $1,000, which are unrecorded, are not invalid for that reason.

ID.—CONTRACTS TO FURNISH ROOFING—MATERIALS AND LABOR.—Contracts for roofing and to lay the same in asphalt pitch, and to furnish and set roofing tile, are not contracts for construction work, but for materials and work to be done in their use.

ID.—LIEN FOR SCREEN DOORS ATTACHED TO BUILDING—FIXTURES—SUBSEQUENT REMOVAL IMMATERIAL.—A lien was properly allowed for screen doors which were attached to the building so as to become fixtures thereto, and such lien was not affected by the subsequent removal and piling of them up for some one's convenience.

ID.—LIEN FOR WORK OF LATHER ON GARAGE—SEPARATE WORK PAID FOR. Where a lather had been fully paid for all work done by him on the hotel building, and he was subsequently employed to do the separate lathing work on a garage, he can claim a lien for such separate work without setting forth in his claim any of the work so paid for.

ID.—LIEN FOR REASONABLE VALUE OF MATERIALS FURNISHED.—It is held that the evidence sustains a lien for the reasonable value of materials furnished at the varying market price when the materials were furnished from time to time.

ID.—SUPPORT OF JUDGMENT FORECLOSING LIEN BY EVIDENCE—REVIEW UPON APPEAL.—INSUFFICIENT BILL OF EXCEPTIONS.—Where the bill of exceptions upon appeal from a judgment foreclosing a lien con-tains no specifications wherein the evidence is insufficient to support the judgment, the appellant is not in a position to insist upon the evidence being reviewed for the purpose of determining whether or not the judgment is supported by the evidence. The fact that the appeal is from the judgment within six months after its entry, upon which the evidence might be reviewed upon a proper bill of excep-tions, cannot affect the rule that specifications of insufficiency are essential to such review.

ID.—VALIDITY OF ASSIGNMENT OF LIEN.—While the assignment of a debt may carry with it the lien given for its security, yet in order to secure this result to the assignee the lien must have been per-fected prior to the time when the assignment was made.

ID.—QUESTION OF VALIDITY NOT REVIEWABLE—SUFFICIENCY OF EVI-DENCE.—Where the question of the validity of an assignment of a lien involves a consideration of the sufficiency of the evidence, which is not reviewable under the bill of exceptions, it cannot be con-sidered upon appeal.

ID.—LIEN FOR MANUFACTURED LIGHTING FIXTURES.—A lien was prop-erly allowed for special lighting fixtures manufactured at the fac-tory of the claimant and installed in the building, though the work of installing them was a very small part of the total compensation therefor. The fact that the total value of the fixtures was $2,900 required no record of the contract therefor. The lighting fixtures, when attached to the building, became a part of the completed structure.

ID.—NOTICE OF COMPLETION OF BUILDING—CESSATION OF WORK BY OWNER—ACCEPTANCE OF BUILDING—CHANGE OF PLANS.—Where the owner, after the completion of four stories of the hotel building, though the original plans and specifications were for a six-story building, filed with the recorder a notice setting out that work had ceased on the building and that it had been accepted by the owner, such notice was in effect a notice of completion, and the time for the filing of liens then commenced to run, and a lien filed too late thereafter cannot be enforced.

ID.—BUILDING WHEN DEEMED COMPLETED—ABANDONMENT BY OWNER.—A building will be deemed completed, though not constructed accord-ing to the original plans and specifications, when the owner abandons the intent to make it a completed structure, at any time during the course of work upon it.

ID.—MATERIAL VARIANCE BETWEEN NOTICE OF LIEN AND PROOF.—Where the notice of lien stated the terms of the contract for materials fur-nished, as to be paid for in installments on the delivery of the ma-terials, at the various dates of delivery, and the proof showed a

contract that payment was to be made on the tenth day of each month for all material delivered during the preceding month, there was a material variance between the notice of lien and the proof, which was fatal to the lien so claimed.

ID.—SUBSTANTIAL COMPLIANCE WITH STATUTE ESSENTIAL TO LIEN—DEALING WITH OWNER IMMATERIAL.—In order for a materialman or contractor to perfect his lien, it is necessary that the statement "of the terms, time given, and conditions of his contract" be made substantially as required by statute. This requirement is not relaxed where the claimant is a person dealing directly with the owner rather than through the agency of a contractor. If the notice of lien is insufficient in one case it is insufficient in all cases.

ID.—MISSTATEMENT AS TO TIME OF PAYMENT VITIATING LIEN.—A misstatement as to the time of payment, in a notice of lien, fails to comply with the statute and vitiates the lien.

ID.—CONTRACT FOR CONSTRUCTION WORK—ALL CARPENTER AND JOINER WORK FOR BUILDING—RECORD ESSENTIAL—INSUFFICIENT RESERVATION—LIEN NOT ALLOWED.—A contract to perform and finish the entire carpenter and joiner work required in the construction of the hotel building, in excess of $1000, under the direction of the architect, according to the plans and specifications, with seventy-five per cent to be paid to the contractors as the work progresses, and twenty-five per cent of their compensation to be retained until thirty-five days after the completion of the work, is a contract for construction, which must be recorded; and where it was not recorded, and the reservation of twenty-five per cent was not made upon the basis of the whole contract price, the contract is void, and no right of lien accrued for the benefit of the contractors.

APPEALS from judgments of the Superior Court of Los Angeles County, and from orders denying motions for new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

J. P. Chandler, and G. C. De Garmo, for Appellant Assignee in Insolvency.

W. T. Craig, and Mulford & Dryer, for A. T. Hagan Company, Appellant.

John W. Kemp, for Yard & Hichborn, Appellants.

D. Joseph Coyne, for Pacific Coast Planing Mill, Appellant.

Gray, Barker, Bowen, Allen, Van Dyke & Jutten, for James S. Falls, A. R. Field, and Richards-Neustadt Construction Company, Respondents.

Lawler, Allen, Van Dyke & Jutten, for Thomas H. Foulkes, Respondent.

John W. Kemp, Kemp & Collier, Grant Jackson, Sheldon Borden, and George H. Moore, for George H. Tay Company, John Douglas Company, and Carpenter & Biles Mill and Lumber Company, Respondents.

Elmer J. Moody, and J. H. Merriam, for Thomas Chisholm, Respondent.

W. T. Craig, for Warren & Bailey Manufacturing Company, Respondent.

Andrew J. Copp, Jr., for Otis Elevator Company, Respondent.

Edward G. Kuster, and Kuster, Loeb & Loeb, for Hipolito Screen and Sash Company, Respondent.

Denis & Loewenthal, for The Meyberg Company, Respondent.

W. W. Butler, for Ferve-Pettibone Company, Respondent.

JAMES, J.—Various lien claimants who furnished lumber and materials for use in the construction of a large hotel building erected by the Wentworth Hotel Company at Oak Knoll, in the city of Pasadena, and some of whom performed work upon and about the structure, sought to foreclose liens in satisfaction of the indebtedness alleged to be owing to them. The building erected by the Wentworth company was originally designed to be six stories in height; after four stories had been completed it was decided by the owner to stop the work of construction, and thereupon the building was accepted as a completed structure. The several actions brought to foreclose liens were consolidated, and a trial was had, which resulted in judgments of foreclosure in favor of the plaintiffs and cross-complainants generally, except as to plaintiffs A. T. Hagan Company, Pacific Coast Planing Mill

Company, and cross-complainant Yard & Hichborn, which latter were denied liens by the trial court. After the institution of the actions the Wentworth Hotel Company was declared to be insolvent and H. S. McKee was appointed as assignee of its estate. There are appeals taken by the Pacific Coast Planing Mill Company and Yard & Hichborn from the judgment and from orders denying their motions for new trial, and an appeal taken by the A. T. Hagan Company from the judgment. McKee, assignee in insolvency, took a general appeal from the judgment entered against the hotel company in favor of the successful claimants. The assignee, however, on his appeal has raised questions affecting the judgment as to only a certain number of the lien claimants.

The Warren & Bailey Manufacturing Company in their complaint alleged that the hotel company had entered into a contract with one Vesper, whereunder Vesper agreed to furnish labor and material for the construction of the hotel building; that the contract provided for the payment of more than the sum of $1,000, and that it had never been filed with the county recorder. The complaint further set out that plaintiffs furnished to Vesper material and labor for which the amount of $1,354.77 remained unpaid. The answer of the assignee denied the allegations of the complaint in general, but admitted that the contract between the hotel company and Vesper had not been recorded. In the findings of the court is set out in full the contract made between Vesper and the hotel company, from which it appears that Vesper was employed as the purchasing agent and was not an original contractor. It is found that the labor and materials furnished by plaintiffs were furnished to Vesper for use in the hotel building, and that they were so used. The judgment awarded a lien to the plaintiffs. The points urged by the assignee as to this claim are, that the findings do not sustain the judgment, and that the findings are not within the issues as made by the pleadings. The findings, we are satisfied, do sustain the judgment. While it is not found expressly that Vesper was acting as the agent of the hotel company in purchasing the labor and materials, it appears from the contract made between him and the former that such was his relation. It is true, as insisted by appellant, that there was a variance between the allegations of the complaint and the

findings of the court. If that variance was a material one within the definition as given in section 469 of the Code of Civil Procedure, then the judgment as to this claimant should be reversed. That section provides that no variance is to be deemed material, ''unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the court may order the pleading to be amended, upon such terms as may be just.'' The variance here was only as to the character of the relationship established by the contract which was entered into between the hotel company and Vesper. The claimant pleaded in its complaint that Vesper was an original contractor acting under an unrecorded contract, while the findings of the court show that Vesper's contract with the hotel company was really one creating an agency in Vesper by which he represented his employer in the purchase of material, etc. As this appeal is presented on the judgment-roll alone, we must assume that the evidence was sufficient to sustain the findings of the court. It is not made to appear that any objection was offered to any evidence which was introduced, upon which the findings were made, on the ground that there was a variance between the allegations of the complaint and the proof, and, therefore, we must assume that there was no such objection. And it does not appear from the record as it is presented to us that the variance was such as could reasonably have misled the appellant to his prejudice. Section 470 of the Code of Civil Procedure provides as follows: ''Where the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs.'' Evidently the trial court concluded that the variance was not material, for it was not ordered that the pleading be amended as is provided to be done by section 469 of the Code of Civil Procedure, where a party has been misled by reliance upon allegations contained in a pleading which showed different facts from those established by the evidence. Of course, if the proof established an entirely different cause of action from that alleged in the complaint, then the variance would have been fatal. Such, however, was not the condition respecting the allegations and proof in this case, and we think that the

conclusion of the trial court was correct and should be sustained. (*Santa Monica L. & M. Co.* v. *Hege,* 119 Cal. 376, [51 Pac. 555].) It may be added that it is an established rule of practice that where a party desires to raise a question as to any variance shown between allegations in a pleading and the proof offered at the trial, such objection must be presented in the trial court; otherwise it is waived. (*Eversdon* v. *Mayhew,* 85 Cal. 1, [21 Pac. 431, 24 Pac. 382].) As we have suggested, it does not appear that objection was made to the evidence as introduced, which evidence we must assume was competent and sufficient to sustain the findings of the court.

Several claimants were awarded liens for material which was placed upon the premises of the hotel company but which did not actually enter into the construction of the building as the same was left at the time work ceased thereon. The court found in each of these cases that the material was furnished to be used in the building and that it was necessary to the completion of the building in the manner and form it had originally been designed to be completed. The position of the assignee is that liens should not have been given, except for work or materials furnished to be used and which were actually used in and upon the hotel building. At the time the work was stopped, plumbing material of the value of $2,970.69, furnished by the George H. Tay Company, was unused, but remained upon the premises. The John Douglas Company had furnished toilet fixtures of large value, and there remained upon the premises unused of such materials at the time of the cessation of work a quantity thereof of the value of $1,810.38. The Carpenter & Biles Mill and Lumber Company had furnished doors, windows, etc., of special design, manufactured for the hotel building, and of these a number, intended for use on the fifth floor of the building, remained unused upon the premises when the work ceased; the value of such unused materials and articles being found by the court to be the sum of $566.59. The court further found with respect to the last-mentioned unused materials that they had been primed and fitted to the openings in the fifth floor of the building, but had not been actually hung therein, but were stored in unfinished rooms of the fifth story of said building. It is contended on the part of respondents

who were awarded liens for these unused materials that, as section 1200 of the Code of Civil Procedure recognizes the right of a materialman to a lien for materials unused, where the work has been abandoned by. the contractor, such a right is intended to be given in the case of an abandonment by the owner. It may be said here that it is the law that the right of lien is not given a materialman ordinarily for materials furnished to be used in a structure, but which are in fact not used, even though they may have been diverted to other purposes beneficial to the owner of the ground and building. The courts of the different states, construing statutes very similar to ours in terms, do not, however, all agree in this conclusion. · In those states where liens are held to attach in favor of the materialmen for material furnished to be used in the construction of ·a building, even though such materials are not in fact incorporated into the structure, the consideration mainly kept in view and to which great weight is given is that the creditor has parted with his property upon the faith that the building to be erected and the ground upon which it is to stand will furnish security for the payment of his debt. The counter line of decisions, holding that such liens are given only where the materials have actually entered into and become a part of the structure, are reasoned out on a line· of argument having as a basis the theory that liens of the variety mentioned are provided to be given upon the assumption that the property to which they are made to attach has been improved and its value enhanced by the labor bestowed or materials furnished; hence that where such labor or materials do not actually enter into the structure, no lien results. To the latter effect are all of the California cases: *Bottomly* v. *Rector et al. of Grace Church,* 2 Cal. 90; *Houghton* v. *Blake,* 5 Cal. 240; *Holmes* v. *Richet,* 56 Cal. 307, [38 Am. Rep. 54]; *Silvester* v. *Coe Quartz M. Co.,* 80 Cal. 513, [22 Pac. 217]; *Bowick* v. *Muir,* 83 Cal. 373, [23 Pac. 390]; *Hamilton* v. *Delhi Mining Co.,* 118 Cal. 148, [50 Pac. 378]; *Stimson Co.* v. *L. A. Traction Co.,* 141 Cal. 30, [74 Pac. 357]. Unless section 1200, Code of Civil Procedure, furnishes authority in support of the judgment awarding liens for unused materials to the claimants hereinbefore mentioned, then, under the Californna decisions cited, such liens cannot be sustained. We do not think the provisions of this section are

applicable to the conditions shown in these cases. That section is designed to provide a method whereby the extent of the liability of the owner under his building contract may be ascertained and fixed where the *contractor* abandons the work. It does in terms so provide, and it would be indeed a strained construction to read into it words to make it apply equally to a case where the owner voluntarily causes work to be stopped. It would not likely be insisted, in view of the decisions to which attention has been called, that if a man purchased lumber to be used in the erection of a certain building, and the lumber was placed upon the premises where it was intended the structure should be erected, and the purchaser then decided he would not build at all, that the seller would have a lien upon the real estate for the value of the materials so sold. Why a different conclusion should follow where the building was actually commenced, but abandoned by the owner at any later stage of the work, is not apparent to us. Nor does the fact that some of the materials were manufactured especially for use in the hotel building, in our opinion, affect these cases. They were not, in fact, so used; and each of the vendors of the materials was charged with the knowledge of the law which gave him no lien until his property had become merged into the structure, and each must be deemed to have contracted with that knowledge present in mind. Until materials furnished under conditions like those shown in these cases, therefore, are actually employed in some part of the structure, no right of lien exists on the part of the person furnishing such materials, but his right of action is a personal one against the owner.

The contract of the Otis Elevator Company required that there be furnished and installed one passenger elevator and one freight elevator, for which the hotel company agreed to pay the sum of $6,875. These elevators were furnished and installed in accordance with the terms of the contract, except that because the hotel company decided to omit the two upper stories of the hotel building as originally designed, there was a saving worked to the contractor on account of labor and materials not used amounting to the value of $340. The president of the hotel company notified the elevator company that the work was to be stopped at the fourth story, and requested to be told what difference would be made in the cost

of installing the elevators. He was advised that a deduction would be made in the amount above stated. In the notice of lien it was recited that the contract had been fully performed and that the full amount agreed to be paid, to wit, $6,875, was owing thereon. Under these facts it is contended that the variance between the statements contained in the notice of lien and the facts proved at the trial is fatal to the right of the elevator company to have a lien as security for its debt. Notices of lien must, in so far as they purport to set out matters made essential by the statute to be stated therein, be substantially true. It often happens, however, that the amount for which a claimant is given a lien is less than that stated in his notice, and it is not held that because a claimant and the owner may differ as to the amount of money due under the contract, the claimant must, if he chooses to litigate that controversy, run the risk of losing his lien because he has overstated in his notice the amount which a court may finally determine to be due him. In this case the elevators furnished and installed by the Otis Elevator Company were completed machines and ready for operation; they were of the kind and character called for by the specifications. In order that the elevators might be made to operate to the additional stories, it only required that the guide rails be extended in length and the necessary supports furnished therefor. The expense of doing this was found by the court to amount to $340, and that amount was deducted from the contract price. No contention is made that the elevators were not complete and fully installed in the building as constructed; on this point counsel for the assignee in their brief say: "Appellant is not complaining of a failure on the part of respondent to complete its contract, but of a variance between the statement contained in its notice of lien and the proof as to completion." There was a substantial completion of the contract to furnish and install the elevators, and the only real inaccuracy shown by the notice of lien consisting in the fact that credit for the sum of $340 on account of unused labor and materials was not set off against the contract price. In one count of its complaint the plaintiff alleged a cause of action for the full contract price agreed to be paid; in another count the facts were fully alleged showing the exact conditions which attended the furnishing and installing of the

elevators. We do not think that the mere failure of the lien claimant to offset against the contract price the credit of $340 in the statement of its claim of lien, where it does not appear that its failure so to do amounted to a willful intent to assert that which the claimant knew to be false, should deprive it of its security which the law provides it may have for its debt, especially where the amount of offset is such a small part of the whole contract price as agreed to be paid. Section 1202, Code of Civil Procedure, provides that "any person who shall willfully include in his claim filed under section one thousand one hundred and eighty-seven, work or materials not performed upon or furnished for the property described in the claim, shall forfeit his lien." It has been held that the provisions of this section are penal in character and must be strictly construed, and that the evidence must be clear and convincing that a violation was willful and intentional before a court will take away the right of the claimant to a lien. (*Pacific Mutual L. I. Co.* v. *Fisher,* 106 Cal. 224, [39 Pac. 758] ; *Schallert-Ganahl L. Co.* v. *Neal,* 91 Cal. 362, [27 Pac. 743].) In *Macomber* v. *Bigelow,* 126 Cal. 9, [58 Pac. 312], referring there to an objection made that there was a variance between the evidence and complaints and claims of lien, the supreme court, quoting from *McGinty* v. *Morgan,* 122 Cal. 103, [54 Pac. 392], said: " 'The statute is a remedial statute, and for the purpose of carrying into effect the object for which it was enacted, is to receive a liberal construction, and the notices which, under its provisions, are required to be given, have regard to substance rather than to form.' " The point is also made by the assignee, but not insisted upon with much vigor, that, as the contract for the furnishing of the elevators provided for the payment of more than the sum of $1,000 and was not recorded, it is void. This contract was not a contract properly to be termed one for the doing of construction work, but rather one for the furnishing of material, and the elevator company was a materialman rather than an original contractor. The statute requiring building contracts, which provide for the payment of more than $1,000, to be recorded, does not, therefore, apply. (*Hinckley* v. *Field's Biscuit Co.,* 91 Cal. 136, [27 Pac. 594] ; *Roebling's Sons Co.* v. *Humboldt Electric L. & P. Co.,* 112 Cal. 288, [44 Pac. 568] ; *Bennett* v. *Davis,* 113 Cal. 337, [54

Am. St. Rep. 354, 45 Pac. 684] ; *Bryson* v. *McCone,* 121 Cal. 153, [53 Pac. 637].) We have examined carefully the very voluminous transcript, which in the main sets out the pleadings of the parties to the several actions which were consolidated, and we fail to find that the assignee made any answer to the second amended complaint of the Otis Elevator Company. The second amended complaint appears in the transcript followed by a demurrer of the assignee to the said second amended complaint, but it neither appears that any answer was afterward filed nor that any ruling of court was made upon the demurrer. Neither does it appear by any of the stipulations entered into that the allegations of this complaint were deemed to be denied for purposes of the trial. Yet counsel on both sides have argued the propositions which we have referred to as though issue were made upon all of the matters involved in the action, and evidence was also introduced at the trial by both the claimant and the assignee. Of course, if the demurrer was never ruled upon, the case of the Otis Elevator Company was never at issue, and was not ready for trial at the time trial was had thereof; but as it appears that the case of this claimant was treated at the trial as though fully at issue, and has been so treated by the several counsel on this appeal, we have considered the questions argued in the light of that assumption.

Thomas Foulkes was, in our opinion, properly allowed a lien for electrical work done in and about the hotel building. The point is made by the assignee that there was a variance between the proof and the recitals in the notice of lien, in that the notice set forth that the work had been completed according to the provisions of the contract, when, in fact, the work had been stopped at the fourth story of the building. The notice of lien contained the recitals required by the statute to be therein stated, and it is not claimed that these recitals incorrectly set forth the facts, except in the one particular noted. It was not strictly incorrect to say that Foulkes had completed his work, under the circumstances shown in this case. He did complete all of his work, which was to be paid for according to the amount done, and not in the way of a lump or aggregate sum for the entire work. The building was stopped by the owner at the fourth story, and Foulkes,

16 Cal. App.—45

706 CALIFORNIA P. C. Co. *v.* WENTWORTH Co. [16 Cal. App.

the contractor, was in no way in default at that time. Foulkes
alleged in his amended complaint that the work was accepted
as complete, and this allegation the assignee did not deny
in his answer. The notice of lien gave very full informa-
tion as to the claim and the amount thereof, and stated all
the facts required by the statute in proper form and with
substantial accuracy.

Thomas Chisholm entered into a contract with the hotel
company on or about the fifteenth day of September, 1906,
whereby he agreed to grade, fill in and otherwise improve the
grounds surrounding the hotel building. He was to furnish
trees, shrubs, plants, flowers, seeds, bulbs, etc., to be used in
the making of such improvements, and to employ necessary
labor to grade, fill in and improve the grounds. The reason-
able cost of the plants, trees and shrubs furnished by him,
and the actual cost of labor employed, was to be paid to him,
and, in addition thereto, he was to receive the sum of $20 per
week for his own services. The court found that there was a
balance of $2,712.61 due the claimant, for which he was
awarded a lien. It is contended that this plaintiff was en-
titled to a lien only for work and labor performed in grading
and leveling the grounds and the making of drives and walks
thereon; that no lien is created in favor of any person who
furnishes and plants seeds, trees or shrubs. The assignee
argues that as the plaintiff was unable to segregate the value
of the grading, excavating, etc., for which the assignee ad-
mits a right of lien might accrue, from the other labor and
materials furnished, for which it is contended no lien should
be allowed, the entire lien must fail. The proposition first
suggested involves a consideration of the provisions of sec-
tion 1191 of the Code of Civil Procedure, which, in its mate-
rial part, provides as follows: "Any person who, at the re-
quest of the reputed owner of any lot in any incorporated
city or town, grades, fills in, or otherwise improves the same,
has a lien upon said lot for his work done and materials
furnished." This section has been construed in several de-
cisions of the supreme court. In *Macomber* v. *Bigelow*, 126
Cal. 9, [58 Pac. 312], it is said that "section 1191 of the
Code of Civil Procedure applies to grading or other improve-
ment of a lot, done independent of, and not as a necessary
part of, the construction of a building." In *Warren* v. *Hop-*

*kins,* 110 Cal. 506, [42 Pac. 986], it is held that the lot upon which the lien is authorized by section 1191 is not limited to any particular subdivision, or to official designation upon a map, but that it includes whatever territory is owned by the person for whom the improvement is made.   In *Williams, Belser & Co.* v. *Rowell,* 145 Cal. 259, [78 Pac. 725], it was held that a system of sewers was such an improvement of lots within the meaning of section 1191, Code of Civil Procedure, as to entitle the contractor to a lien as security for the payment for the work performed and material furnished. The furnishing and planting of seeds, trees and shrubs, and the caring for the same for such a period of time as would insure that the seeds had become well started and that the plants and trees were thoroughly settled in the ground, would seem to be an improvement to the real estate which was among those intended to be included in the provisions of section 1191, Code of Civil Procedure.   It is probably not true that under the terms of this section, a gardener or tiller of the soil could claim a lien by reason of labor expended in the general care of trees or crops, but under the contract made by Chisholm it appears that he was only to plant the seeds, trees, flowers, shrubs, etc., and to see that they were well started after being placed in the ground.   From the testimony set out in the transcript it would seem that he made no claim for any other service done or materials furnished, and we think that the court properly allowed a lien for the amount hereinbefore mentioned.   It seems to be conceded that the Wentworth Hotel grounds were at the time the contract of Chisholm was made, and at the time the work was performed and materials furnished, located within the limits of the city of Pasadena.   Section 1191 in terms provides only for a lien to be given upon a lot located within the incorporated limits of a city or town.

As to the claims of E. G. Judah and B. V. Collins, the only objection urged by the assignee is that as the amounts found due to these claimants in each case exceeded the sum of $1,000, and as their contracts were not recorded, such contracts should be held void.   Judah was to furnish roofing and lay the same in asphalt pitch on concrete surfaces, and Collins was to furnish and set roofing tile.   In our opinion, neither of these claimants contracted to do work which can properly

be termed construction work, but they were materialmen, and therefore their contracts were not required to be placed of record. What we have said with relation to the claim of the Otis Elevator Company on this point applies to these cases.

The Hipolito Screen and Sash Company furnished screens for the windows and doors of the hotel building, which the evidence shows were actually fitted to and left upon the various openings for which they were designed. It was stipulated that screens to the value of $373.20 were at the time work was stopped upon the building stacked on the fourth floor thereof. As before noted, the evidence shows that the screens were all put in place by the contractor—not only fitted, but actually run into the grooves by which they were held, or fastened to the frames with hinges. When once so attached to the building the screens became fixtures thereof, just as much as would a door hung upon hinges which would be removable by taking out a hinge-pin, and the fact that they were, for someone's convenience, taken down and piled up, would not destroy the right of lien acquired by the materialmen so furnishing them. We think the court properly allowed a lien to this claimant.

As to the claim of James S. Falls, assignee of Frank Lavine, the latter being a mechanic who was engaged on the hotel building as a lather, the appellant makes the point that the court should not have allowed said claim and a lien as security for the same, because there was a variance between the notice of lien as filed with the recorder and the proof made at the trial. More particularly specified, the objection as made is that the assignor of this claimant performed a large amount of work prior to that for which he made his claim, and that the amount of his claim represented only a balance due on account, whereas the notice of lien stated the same to be for a certain number of days' work at the agreed rate per day, without showing the whole amount earned under Lavine's engagement with the hotel company. This contention is scarcely borne out by the testimony shown in the transcript. The witness Richards, who engaged Lavine to do the lathing, testified that the amount for which the claim was made represented money due for particular work, and that there was no entire contract covering lathing to be done for the whole job. We quote from the testimony of this witness: ''Whenever he

[Lavine] came to a place where there seemed to be no more work for a time and then all persons stopped and the bill would be paid. He has been paid practically, I think, entirely for all work done on the hotel proper, and this work [meaning that for which the claim was made] was for the garage, really a separate proposition. Well, it entered into the hotel building, but I mean—I could not state definitely how long a time elapsed between his stopping work on the hotel building proper and his commencing work on this garage, but some little time; my impression is, several days. I think this work was not a continuation of the other work that he had been doing." The work performed by Lavine was paid for at a certain rate per day, and it appears that all work done by him previous to that performed upon the garage had been completely paid for and that no account existed in that behalf. It was, therefore, a correct statement to set forth in the notice of lien the number of days which the claimant was engaged on the particular work referred to, and the amount due to him therefor.

A. R. Field, assignee of the Fire Pulp Plaster Company, was awarded judgment in the sum of $602.85 and a lien to secure payment thereof. The Fire Pulp Plaster Company furnished plastering material, and it was stated in the notice of lien, and also in the second cause of action set forth in the complaint of Field, that no price was agreed upon for such material and that the reasonable value thereof was agreed to be paid. The court found in accordance with the allegations of the second alleged cause of action, which were consistent with the claim made in the notice of lien. The appellant contends that the evidence does not sustain the findings of the court. Considered as a whole, the evidence received in support of this claim, in our opinion, does sustain the findings of the court. One of the witnesses testified that the price of $9 per ton was quoted at the time some of the plastering material was ordered, and that this price was accepted, but it also reasonably appears from the evidence that it was contemplated by the parties that this material should be ordered from time to time as needed, and that the price to be paid therefor was not necessarily a uniform price of $9 per ton, but such a price as might be indicated by the state of the market at the particular time the merchandise was

ordered.   Charles E. Richards, one of the persons who super-vised the ordering of this material, testified as follows: ''The price on all that sort of things fluctuates, and he simply agreed to give me the lowest market price whenever we or-dered the goods.''· The testimony of witness Richards clearly indicates what the understanding of the parties was at the time, and the court was fully warranted in making the find-ing in accordance with the allegations of plaintiff's second alleged cause of action.

On the appeal from the judgment entered in favor of the Richards-Neustadt Construction Company, the appellant con-tends that the judgment is not supported by the evidence. On behalf of the respondent here concerned it is urged that the question of the sufficiency of the evidence cannot be in-quired into, for the reason that appellant's bill of exceptions contains no specification as to the particular matters embraced within the findings of the court which it is claimed are in-sufficiently supported by the evidence.   This point was made by the same counsel with respect to the claims of Field and Falls previously considered herein.   The judgment as to those cases was sustained by the evidence, conceding that the record properly preserved to appellant the right to raise question as to that matter.   It is a fact, however, that in the bill of ex-ceptions there are contained no specifications pointing out wherein the evidence is deemed to be insufficient to support the decision of the court, and for that reason, under the pro-visions of section 648, Code of Civil Procedure, the appellant is not in a position to insist upon the evidence being reviewed by this court for the purpose of determining whether or not the judgment is thereby supported.   In the case of *San Luis Water Co.* v. *Estrada,* 117 Cal. 168, [48 Pac. 1075], the su-preme court has said: ''It is true, as a general proposition, that this court will not review the evidence in a bill of ex-ceptions, unless it specifies the particulars in which the evi-dence is alleged to be insufficient to sustain the decision. (Code Civ. Proc., sec. 648.) ''   And again, in the case of *Swift* v. *Occidental Mining etc. Co.,* 141 Cal. 161, [74 Pac. 700], we find these expressions: ''No reference to the evidence is required in the specification except to say that it is insuffi-cient to justify the particular finding called in question. . . . The object of the rule requiring these specifications is first to

shorten the statement of the evidence by excluding everything irrelevant to the specified fact; and, second, to notify the opposing party of the particular finding called in question, in order that he may see that the statement fairly and fully presents the evidence bearing upon that particular matter. This object accomplished, the statute is satisfied.'' There was in this case no motion for a new trial, and while it is true that a party is entitled upon an appeal from a judgment to have the evidence reviewed, providing the appeal is taken within six months after entry of the judgment (Code Civ. Proc., sec. 939), there is no provision in case of such an appeal which dispenses with the usual requirements affecting the preparation and form of a bill of exceptions, where the sufficiency of the evidence to sustain a decision is sought to be questioned. It is the law, as contended for by appellant, that there can be no assignment made of a debt provided to be secured by the mechanic's lien law which will carry with it to the assignee the right to enforce a lien, where such assignment is made prior to the lien having been perfected by the assignor. The authorities uniformly hold that, while the assignment of a debt may carry with it the lien given for its security, in order that this result shall accrue in favor of the assignee the lien must have been perfected prior to the time the assignment was made. (*Duncan* v. *Hawn,* 104 Cal. 10, [37 Pac. 626]; *McCrea* v. *Johnson,* 104 Cal. 224, [37 Pac. 902]; *Rauer* v. *Fay,* 110 Cal. 361, [42 Pac. 902].) As we have suggested, however, the objection made on this point by appellant involves a consideration of the matter as to the sufficiency of the evidence to sustain the findings made by the court, and that matter cannot be considered on the state of the record as it is here presented.

The Meyberg Company made a claim, which was sustained by the court and a lien awarded, for the furnishing of special lighting fixtures, and installing them in the hotel building. The fixtures were all manufactured at the factory of the claimant, and the work of installing them constituted in value but a very small part of the total compensation agreed to be paid by the hotel company. This claimant was a materialman, and, although the contract price was the sum of $2,900, it was not necessary that such contract should have been recorded. The further point is made by appellant that the

materials furnished were not such as to entitle the claimant to a lien, as they were fixtures not permanently attached to the structure. With this contention we do not agree. The various articles furnished by this claimant were designed especially for use in this hotel building, and they did become a part thereof by being regularly attached thereto, and, in our view, constituted as much a part of the building as did the doors, windows and other attachments and appurtenances which were fastened by means of hinges, cleats and other similar arrangements. They constituted a necessary part of the completed structure in view of the use for which it was designed to be put, and we think came fairly within the definition of materials for which a lien is intended to be given by the constitution and statute.

The same points are made with respect to the claim of Ferve-Pettibone Company, and for the same reasons which have been given with respect to the claim last above considered, the judgment in favor of this claimant should be sustained.

The court refused to allow a lien as security for the payment of the claim for laundry machinery furnished by A. T. Hagan Company. This claimant filed its notice of lien with the recorder on July 11, 1907. The hotel company, on the eighth day of April, 1907, had filed a notice with the recorder setting out that work had ceased on the hotel building and that the building had been accepted by the owner. The trial court found, and we doubt not correctly, that the hotel company having abandoned the design of completing the building at that time, and having filed the notice just referred to showing an acceptance of the building, that this notice was in effect a notice of completion and that the time for filing of liens then commenced to run. It has been held that a building will be deemed completed, even though not constructed in accordance with the plans and specifications, where the owner abandons the intent to make it a completed structure at any time during the course of work upon it. In *Schwartz* v. *Knight*, 74 Cal. 432, [16 Pac. 235], reaffirmed in *Marchant* v. *Hayes*, 120 Cal. 137, [52 Pac. 154], it is said: "The code does not mean that the building, if, as in this case, it was intended to be a dwelling-house, must be completed in all respects as contemplated by the plans and specifications, or

even that it shall have become habitable as a dwelling.   Ordinarily, the lien cannot be filed until a building is so completed.   But when it is made to appear that it was the original purpose of the owner to erect and build it in part only, or that the owner, having proceeded to erect the house in part, abandoned his design of finishing it, the building should be held to be completed, within the meaning of section 1187, from the time it was so built in part.   The purpose of the owner may be inferred from his acts or omissions, but the ultimate fact to be determined is his original or substituted purpose to leave the building unfinished."   The trial court, therefore, properly held that the claim of lien of the Hagan company was filed too late and that the claimant was not entitled to a lien.

The Pacific Coast Planing Mill Company appealed from the judgment denying it the right to a lien for lumber and finishing material furnished for the hotel building.   In their notice of lien the statement of the demand, etc., was in the following form: "And the following is a statement of the terms, time given and conditions of said contract, to wit: Lumber material, mill finish, furnished between July 31, 1906, and March 30, 1907, amounting to the sum of $15,436.57, which said sum was to be paid in installments on the delivery of the said material at the various dates of delivery."   The proof made at the trial showed that prices were agreed upon for various of the material furnished and that payment therefor was to be made on the tenth day of each month for all material so furnished during the preceding month.   Appellant contends that the trial court erred in holding that there was a variance between the notice of lien and the proof.   We think that the judgment with respect to this claim is correct.   Conceding that the statement in the notice of lien as to the amount to be paid was sufficient to indicate that that amount was in accordance with prices agreed upon, still the notice contained a statement as to time of payment which was in direct variance with the evidence offered by the claimant. We think this variance was fatal to the right of the claimant to a lien.   The statute requires the notice of lien to set forth a statement of the demand, after deducting all just credits and offsets, with the name of the owner and "with a statement of the terms, time given and conditions of his contract."

In order for a materialman or contractor to perfect his lien, it is necessary that this statement be made substantially in the form required by the statute. This requirement is not relaxed where the claimant is a person dealing directly with the owner, rather than a laborer or materialman engaged through the agency of a contractor. If such a notice is insufficient in one case it is insufficient in all cases. Here there was a misstatement at least as to the time of payment. The provisions of the statute were, therefore, not complied with. There is nothing in the case of *McGinty* v. *Morgan,* 122 Cal. 103, [54 Pac. 392], cited by appellant, inconsistent with this view.

Yard & Hichborn were denied by the trial court the right to enforce a lien for money due under a contract made with the hotel company. This contract provided that the contractors, under the direction of the architect, should perform and finish the entire carpentry and joinery required in the construction of the hotel building, according to the plans and specifications. It was provided that there was to be paid by the owner to the contractors the net cost of the work, plus five per cent, which five per cent should be compensation to the contractors for services, and accounts for labor were provided to be paid for on the second and fourth Saturdays of each month upon statements to be rendered by the contractors to the owner, giving the names of the parties employed, the wages paid per day and amounts of labor performed; and the material used was to be paid for upon presentation of a bill for the same from the parties of whom it was purchased, and upon certificate of the architect. Subdivision 6 of the contract provided as follows: "That the said contractors shall be paid seventy-five per cent as the work progresses; the balance of twenty-five per cent of their commissions for purchasing, hiring of labor and superintending of work, shall be retained until thirty-five days after the building is fully completed, and then paid with the final certificate of the architect, which shall not be issued before the work under this agreement is fully and finally completed." This contract was a contract for construction. It was undoubtedly so regarded by the parties, for it was reduced to writing and recorded in the usual form. Its effect was not merely to employ the contractors as agents of the owner to negotiate for labor and

materials and superintend the work of building. It is clear from the terms of the contract that the cost of labor was to be paid directly to the contractors, and not to the employees engaged by such contractors to do work upon the building. (See *Malone* v. *Big Flat Gravel M. Co.,* 76 Cal. 578, [18 Pac. 772].) The contract was such a contract as is required by the provisions of section 1183, Code of Civil Procedure, to be reduced to writing and recorded. It was defective in its provisions, however, in that twenty-five per cent of the whole contract price was not made payable thirty-five days after final completion of the contract. Twenty-five per cent of the profit to the contractors, otherwise termed as commission in the contract, only, it is conceded by respondent, was reserved for payment thirty-five days after the completion of the building. The contract was, therefore, void and no right of lien accrued for the benefit of the contractors. (Code Civ. Proc., secs. 1183, 1184; *Morris* v. *Wilson,* 97 Cal. 644, [32 Pac. 801] ; *Spinney* v. *Griffith,* 98 Cal. 148, [32 Pac. 974] ; *Willamette etc. Co.* v. *College Co.,* 94 Cal. 229, [29 Pac. 629] ; *Merced Lumber Co.* v. *Bruschi et al.,* 152 Cal. 372, [92 Pac. 814].)

As to the George H. Tay Company, the judgment is modified by deducting from the amount for which said claimant was adjudged entitled to a lien and a foreclosure thereof, the sum of $2,970.69 ; as to John Douglas Company, the judgment is modified by striking from the amount for which said claimant was adjudged entitled to a lien and a foreclosure thereof, the sum of $1,810.38 ; as to Carpenter & Biles Mill and Lumber Company, the judgment is modified by deducting from the amount for which said claimant was adjudged entitled to a lien and a foreclosure thereof, the sum of $566.59. The judgment as entered by the trial court in all other respects as to other claimants is affirmed. The orders denying motions for new trial, as made by the Pacific Coast Planing Mill Company and Yard & Hichborn, are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 25, 1911, and the following opinion then rendered thereon:

THE COURT.—The sole question presented by the petition for a rehearing of this cause is whether the law secures a lien upon a building for the value of materials furnished (and necessary) for its completion according to its original plan, but left unused by reason of a change of plan by the owner after the materials have been delivered. Upon this question the views of the district court of appeal are sustained. Other questions discussed in the opinion of that court, several of which are novel and difficult, have not been considered.

Rehearing denied.