118 148
f126 567
118 148
141 32
118 148
e146 333

[Sac. No. 210.   Department One.—September 13, 1897.]

## ALEX. HAMILTON et al., Appellants, v. DELHI MINING COMPANY et al., Respondents, and GEORGE BALDWIN et al., Appellants; C. W. KITTS, Intervenor, Appellant.

MECHANICS' LIEN—CONSOLIDATED MINING CLAIMS—OPERATION AS ONE MINE —CLAIMS OF LIEN.—Mining claims severally located on the same ledge and consolidated in one mining company, and worked by it as one mine, may, for the purposes of the mechanics' lien law, be regarded and treated as a single claim, and declared on as such; and claims of lien may be filed upon the property as a whole, without specifying the particular claim or location upon which work was done, or the amount due for labor on each claim, although the lien claimant worked on more than one location.

ID.—FINDING AS TO OPERATION OF CLAIMS—CONCLUSION OF FACT AMONG CON-CLUSIONS OF LAW.—A finding that the claims were operated as one mine is none the less a conclusion of fact, because placed among the con-clusions of law; and whether it is regarded as an independent finding of fact, or a deduction from special facts found, is immaterial, where the special facts found are sufficient to support the conclu-sion of fact.

ID.—CONTRACTS WITH OWNERS OF SEVERAL LOCATIONS—CONSOLIDATION NOT AUTHORIZED BY OWNERS—KNOWLEDGE OF FACTS—ABSENCE OF NOTICE TO LIEN CLAIMANTS—ESTOPPEL.—Where the owners of the several locations made several contracts with one person to sell to him their respec-tive claims, with the right in him or his assigns to work each claim during the existence of the contract therefor, and such person or-

ganized a mining company, to which all of the several contracts were assigned, and the consolidated claims were worked by it as one mine, to the knowledge of the owners of the several locations, and with the purpose and effect of enhancing the value both of the property as an entirety, and of each of the several locations embraced therein, the absence of express authorization for such consolidation in the several contracts is immaterial, and such owners are to be deemed to have authorized the improvement for that purpose, within the provisions of section 1192 of the Code of Civil Procedure, in the absence of the posting of the notice required by that section, that they would not be responsible for such work; and they are estopped, as against lien claimants, from objecting to want of authority for the consolidation.

ID.—MORTGAGE BY OWNERS AND JUDGMENT LIEN SUBORDINATE TO LABORERS' LIENS.—A mortgage executed by the owners of the several mining locations prior to the commencement of work upon the improvement of the consolidated claims as one mine by the mining company, but not recorded until after the cessation of such work, is subordinate to the liens of laborers employed thereupon by the mining company, having no notice or knowledge thereof, as is also a judgment lien docketed against such owners subsequently to such work.

ID.—LEASE OF MACHINERY AND IMPLEMENTS—OPTION TO PURCHASE—TITLE IN LESSOR—NONUSE IN MINE—LIENS NOT OPERATIVE.—Where the mining company held a lease of certain mining machinery and implements belonging to another company, at a fixed rental, with option to purchase, with a provision that title should remain in the lessor until the purchase money was paid, such portion of the machinery and implements as were not used in the working or developing of the mine, nor in any manner affixed thereto, are not part of the realty, nor subject to the liens of laborers upon the mine.

APPEALS from a judgment of the Superior Court of Nevada County.   John Caldwell, Judge.

The facts are stated in the opinion of the court.

Charles W. Kitts, for Appellants Baldwin and Kitts.

Thomas S. Ford, and I. C. Lindley, for Appellants Alex. Hamilton et al.

Fred Searls, for Respondent Delhi Mining Company.

VAN FLEET, J.—Action to enforce laborers' liens against the mine and mining property of the defendant, Peach Blow Consolidated Gold Mining Company.

There are cross-appeals, both upon the judgment-roll, without a bill of exceptions, the plaintiffs appealing from a part only of

the judgment, and the defendants Baldwin and the intervenor jointly appealing from the whole thereof.

1. The last-mentioned appeal will be first considered. The material facts involved in this appeal are these: In December, 1894, George W. Baldwin, Sr., owning the East Orleans and Baldwin, or Gracie, locations, and George W. Baldwin, Jr., owning the Morning Star and Birthday locations, each made a separate contract with one George Senn, by which they agreed to sell to Senn their respective claims, with the right in the latter, or his assigns, to work them during the life of the contracts; before doing any work, Senn organized the defendant, Peach Blow Consolidated Gold Mining Company, and assigned said contracts and his rights thereunder to that corporation. The corporation in April, 1895, started in to develop the claims, working them as one mine or claim; its work consisted in enlarging, timbering, and sinking deeper a shaft already on one of the locations, and commencing the erection of suitable works for the development and working of the mine, such as a mill, hoisting works, and other necessary buildings, a reservoir and pipe line, etc., which work embraced, to a greater or less extent, all four of the claims—they being adjoining and upon the same ledge. The plaintiffs were employed by the Peach Blow Company as mechanics and laborers to do the work indicated. The labor of some of them was confined to one of the several claims only, while others worked on two or more, and some on all. All the work was done between April 22 and June 12, 1895, at which latter date plaintiffs quit, and work ceased. The claims of lien were filed within thirty days from the cessation of work; they each described the work generally as having been performed "on the plant and consolidated mines of said defendant" (Peach Blow Mining Company), without designating the amount of work done or wages due upon any particular claim; and each described the premises upon which the lien was claimed as "that certain piece of mining property known as the mine, plant, and works of the Peach Blow Consolidated Gold Mining Company, a corporation," situated, etc., and consisting "of four locations, viz., the 'Birthday,' the 'Morning Star,' the 'East Orleans,' and the 'Baldwin' (or 'Gracie'), each being about fifteen hundred feet in length by six hundred

feet in width, and all forming one consolidated piece of mining ground, worked as one mine, by one corporation."

The Baldwins also worked on the mine for the Peach Blow Company during the same period, and knew of the labor that was being done thereon and the improvements made.

In January, 1895, the Baldwins gave to the intervenor, Kitts, a mortgage for five hundred dollars, covering all four of the several locations mentioned, which mortgage was recorded on September 17, 1895; and in October, 1895, Kitts recovered a judgment against the Baldwins in a justice's court for two hundred and ninety-nine dollars and costs, an abstract of which was filed in the recorder's office of Nevada county on October 24, 1895.

The court decreed the liens of the plaintiffs to be valid and binding, and a first charge against the entire property, both as to the interest of the Peach Blow Company and that of the Baldwins, and held the liens of the mortgage and judgment of Kitts to be subordinate thereto. This is complained of as error, as being in violation of the rights of these appellants.

It is contended that the declarations of lien filed by the plaintiffs were absolutely void, because they declared on the property as a whole, and did not specify the particular claim or location upon which the work was in any instance done, nor the amount due for labor on each claim, where the lien claimant worked on more than one.

As to the interest of the Peach Blow Company, this objection is clearly not good. Where several claims or locations are owned and operated as one mine, as against the parties so uniting them, they may, for the purposes of the lien law, be regarded and treated as a single claim, and declared on as such. (*Tredinnick v. Mining Co.*, 72 Cal. 78; *Malone v. Big Flat etc. Min. Co.*, 76 Cal. 578.)

It is urged that there is no finding that the claims were so worked, but merely a conclusion of law, unsupported by the facts. But this contention is not tenable. While the specific finding that the property was so operated is placed among the conclusions of law, it is none the less a conclusion of fact, and the circumstance that it was misplaced does not affect its character as such. Whether it be regarded as an independent finding of the fact, or

as a deduction from special facts found, is immaterial, since the latter are amply sufficient to support it.

Nor do we regard the objection made to the sufficiency of the declarations of lien as available to the Baldwins. While the ownership of the latter in the locations comprising the mine was several, and there was no express authorization in their contracts with Senn to work the separate claims as a consolidated property, they were nevertheless cognizant of the fact that the property was being developed as a single mine or claim, and that the improvement and labor thereon, wherever placed, was with the purpose and effect of enhancing the value, not alone of the property as an entirety, but of each of the several locations embraced therein. Under these circumstances, they are, within the provisions of section 1192 of the Code of Civil Procedure, deemed to have authorized the improvement for that purpose; and not having posted the notice required by that section, that they would not be responsible for such work, they are, as against these plaintiffs, estopped from raising the objection now made.

The other objections made to the sufficiency of the declarations of certain of the plaintiffs are without merit.

As to Kitts' mortgage and judgment, his liens thereunder did not attach until subsequent to those of the plaintiffs, and were, therefore, properly held to be subordinate thereto.

2. The appeal of the plaintiffs involves the single question whether the court below under its findings properly held that their liens did not cover certain mining machinery and implements, which they claim should have been included therein as a part of the mine.

The machinery and implements in question were upon the premises of the Peach Blow Company at the time the labor of plaintiffs was performed, but under these circumstances: all of said machinery belonged to the defendant, Delhi Mining Company, but had been by that company leased to George Senn, with an option to purchase, and it was stipulated in the lease that the machinery, mill, and appliances should remain the property of the Delhi company, until the purchase price was paid. The lease contained a clause providing that if the rent was not paid on the twenty-fifth day of May, 1895, or within five days there-

after, the Delhi Mining Company might retake possession of said property.   Senn assigned his lease to the Peach Blow Company, and under the lease the property was removed from the Delhi Mining Company's premises to the Peach Blow mine, where it was piled, preparatory to use thereon.   Neither the mill, machinery, hoisting works, tools, nor appliances covered by the lease, nor any part thereof, ever was erected upon or affixed to, or used in or upon, the mining ground of the Peach Blow Company, except one Pelton waterwheel, with the nozzle, and one hoisting reel and pipe, which were affixed to the building on the latter claim.   The other machinery and tools remained on the ground of the Peach Blow Company, unattached and unused, until June 12, 1895, when, default having been made in the payment of the rent specified in the lease, the Delhi company took possession of said machinery and implements, and removed them from the premises.

From these facts the court determined that plaintiffs were not entitled to a lien on any part of the machinery and tools included in the lease, excepting only the Pelton waterwheel, hoisting reel, nozzle, and pipe, which had been affixed to the building.

Plaintiffs contend that under the facts all the machinery and tools were, within the rule of section 661 of the Civil Code, a part of the realty, and so subject to be taken in satisfaction of their liens.   We do not perceive wherein that section of the statute has anything to do with the status of this property under the facts found.   The section provides: "Sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine."   It is expressly found that the excepted machinery and tools were not erected upon, nor "used in the working or the developing" of the mine, and they cannot, therefore, by virtue of that section, "be deemed affixed to the mine."   Nor do we know of any principle of law independently of the statute under which they could be held to have become a part of the mine, under the circumstances shown.   They were in their nature "materials" furnished for use on the mine (*Roebling's S. Co. v. Humboldt Electric etc. Co.*, 112 Cal. 288, and cases there cited), for the value of which no lien attaches in favor of the materialman, unless actually used in the mine or structure (*Silvester v.*

*Coe Quartz Min. Co.*, 80 Cal. 510, 513); and certainly the laborer working on such mine or structure can be in no more favorable situation toward such unused material than the party furnishing the same.

The general theory upon which liens to laborers, mechanics, and materialmen are given is, that by the labor, or use of the material, the property has been enhanced in value. But none of this property was so used, nor was any of the labor done "upon" or "with" such machinery or tools; it remained, until carried away by its owner, the Delhi company, piled upon the ground where it had been dumped, wholly unused for any purpose connected with such labor, or the mine upon which the labor was performed. It was, therefore, neither within the letter or spirit of the section of the Civil Code above quoted, nor of section 1183 of the Code of Civil Procedure, which gives to one performing labor upon a mining claim a lien upon the same, and "the works owned and used by the owners" in its operation. The action of the court, therefore, in excluding it from the operation of plaintiffs' liens was proper.

The judgment is affirmed.

Harrison, J., and Beatty, C. J., concurred.