Argued October 26, modified November 16, rehearing denied December 14, 1915.

## HAINES COMMERCIAL CO. v. GRABILL.

### (152 Pac. 877.)

**Mines and Minerals—Liens—Foreclosure—Complaint—Sufficiency.**

1. A complaint to foreclose liens for materials and labor on mining property, which alleges that plaintiff, at the request of defendant, the owner, and codefendant operating the mine, acting through a third person, their duly authorized agent, worked as an underground miner at an agreed wage per day, earning a specified sum, leaving unpaid a specified sum; that the services performed by plaintiff were performed in the working, development and operation of the property; that plaintiff, to perfect a lien, filed and caused to be recorded in the office of the county clerk in the county his claim and notice on May 4th, while the work was completed on March 31st preceding; that the claim and notice of lien contained the name of the lien claimant, a true statement of the claim and demand, after deducting all just credits, the name of the owner and reputed owner of the property, the name of the person by whom claimant was employed, a description of the property charged, a true statement of the contract, and that the lien has not been satisfied, but is a valid lien, states a cause of action.

   [As to who are "laborers" within the statute giving liens to laborers, see notes in 58 Am. St. Rep. 303; Ann. Cas. 1913B, 138.]

**Mines and Minerals—Notice of Lien—Statutory Provision.**

2. A lien notice, which complies with Section 7445, L. O. L., providing that a true statement of the demand, after deducting

credits and offsets, with the name of the reputed owner and name of the person by whom claimant was employed, with a description of the property, is sufficient, though it does not segregate the demand for overtime work.

**Statutes—Title—Sufficiency.**

3. The title of Laws of 1907, page 293, entitled an act to amend enumerated sections of the Code and statutes and providing for liens in favor of any person performing labor on or furnishing materials or supplies for the operation of any mine, and regulating the priority of such liens, and of Laws of 1911, page 193, entitled "An act to amend" Section 7447, L. O. L., "to provide for the priority of mortgages and for the posting and recording of the same," are sufficient, within the Constitution, to justify provisions in the body of the acts making liens superior to mortgages.

**Constitutional Law—Due Process of Law—Priority of Liens.**

4. A mortgagee, in a mortgage executed subsequent to the statute giving laborers and materialmen a preference, is not deprived of his property right without due process of law, because his lien is postponed to the liens of laborers and materialmen.

**Mines and Minerals—Liens—Foreclosure—Personal Judgment.**

5. In a suit to foreclose a lien for materials and labor on mining property, brought against the owner and a lessee operating the property, the court, granting relief, cannot render a personal judgment against the owner.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.    Statement by MR. JUSTICE BENSON.

Three complaints were filed by the Haines Commercial Company, a corporation, the Eastern Oregon Light & Power Company, a corporation, and D. B. Rhodes, against Daniel Grabill, as trustee, and others, containing, for plaintiffs and their assignors, allegations upon 72 causes of suit, seeking to foreclose certain liens for materials and labor upon mining property owned by Highland Gold Mines Company and operated by Highland Development Company as lessee. The three suits were by stipulation merged and tried as one. The causes of suit are set out in substantially the same form, so a statement of the allegations of one will serve for all, in our consideration of the case and reads as follows:

"That during all the times and dates hereinafter mentioned the Highland Gold Mines Company, a corporation, and the Highland Development Company, another corporation, were in the actual control, and in the actual working, development, and operation of said mining property, and that R. R. McGaughey was the duly authorized agent of both of said companies in the management, working, development, and operation thereof.

"That heretofore, and on the first day of March, 1914, at the special instance and request of the above-named defendant, the Highland Gold Mines Company, a corporation, and the Highland Development Company, a corporation, acting by and through one R. R. McGaughey, their duly authorized agent for said purpose, the plaintiff began work upon said mining property, above described, as an underground miner, with pick and shovel and other usual tools used in said work, and between said dates and the thirty-first day of March, 1914, both dates inclusive, when he ceased so to work and labor, he performed 31½ days' labor, including overtime, at the agreed wages of $3.50 per day, earning thereby the total sum of $110.25, no part of which has ever been paid, except the said sum of $32.70, leaving a balance due him on account of said services from said defendants, Highland Gold Mines Company and the Highland Development Company, of the sum of $77.55, no part of which has been paid.

"That said work, labor and services so performed by plaintiff were done and performed in the working, development and operation of the mining property hereinbefore described and all thereof, and was for the benefit of and common to all of said property.

"That on the fourth day of May, 1914, the plaintiff, for the purpose of securing and perfecting a lien for the money due him as aforesaid under said contract, upon the properties hereinbefore described, duly filed and caused to be recorded in the office of the county clerk of Baker County, Oregon, his claim and notice of lien, duly verified by him as by law required.

"That said claim and notice of lien was filed under the provisions of the laws of the State of Oregon and contained the name of the lien claimant, a true statement of his claim and demand after deducting all just credits, the name of the owner and reputed owner of the mining property, the name of the person by whom claimant was employed, a true statement of the contract under which said services were performed, a description of the property charged with the lien sufficient for identification, which claim and lien were verified by the oath of claimant. That said claim of lien has not in any way been satisfied or discharged, and the same is now a valid and subsisting lien upon said property. That plaintiff paid $2.20 for filing and recording said lien, and that $25 is a reasonable sum to be allowed by the court as attorney's fees for the foreclosure of said lien."

The defendants filed separate demurrers upon the ground that the complaint does not state facts sufficient to constitute a cause of suit. These being overruled, the defendant Grabill filed an answer which, after denying the allegations of the complaint, pleads affirmatively that the Highland Gold Mines Company is the owner of the mining property described, and had leased the same to the Highland Development Company, which had incurred all the indebtedness specified in the complaint, and that the former corporation had nothing to do with the operation of the mine. Then follows his cross-complaint, alleging that he is the mortgagee in a certain mortgage or trust deed executed by the Highland Mines Company covering the property described in the complaints for the purpose of securing the sum of $100,000, with interest since the date thereof, March 1, 1908. He alleges that the debt thereby secured is past due and is unpaid, and prays for a foreclosure.

To this a reply was filed which, after denying that the property was operated by the Highland Development Company as lessee, admits the execution of the trust deed to defendant Grabill and that the same has not been paid. Then follow the affirmative allegations that the two defendant corporations continued to operate the mine after giving the mortgage and incurred the liabilities sued upon by plaintiffs, and that these obligations were created with the full knowledge and consent and with the active operation of defendant Grabill as trustee, and as an officer and agent of the defendant corporations. Then follow some allegations in the nature of an estoppel, and a further contention that no notice was published or recorded as required by the laws of Oregon, either upon the property or otherwise, of the existence of the mortgage or trust deed or of the lease.

The issues having been thus joined, the parties entered into a written stipulation of facts, one paragraph of which reads as follows:

"It is further stipulated and agreed by and between the parties hereto that all of the allegations set forth and contained in the complaints of plaintiffs are hereby admitted, except as to matters otherwise stated in this stipulation, as therein set forth, save and except that statement alleging it to be a fact that the liens sought to be foreclosed in said complaints are prior in time and superior in right to the lien of the mortgage held by the defendant Daniel Grabill, as trustee, which mortgage is particularly set forth and described in the answer of the defendant Grabill, as trustee, on file herein, and that the question of the priority of said liens over said mortgage, or the priority of said mortgage over said liens, is hereby reserved as a question of law to be submitted to and determined by this court, subject to appeal."

The only particular in which the stipulation is inconsistent with the allegations of the complaint is the paragraph thereof which recites that the mine was held and operated by Highland Development Company under a lease from Highland Gold Mines Company, the owner. It is agreed that neither company ever posted or recorded any notice of the lease, and it is also stipulated that defendant Grabill never complied with the law in regard to posting any notice of his mortgage. From the decree entered in favor of plaintiffs, foreclosing their several liens, and also the mortgage of defendant Grabill, making the latter subsequent and inferior to the former, Grabill appeals.

Modified. Rehearing Denied.

For appellant there was a brief and an oral argument by *Mr. Orville B. Mount.*

For respondents there was a brief with oral arguments by *Mr. James H. Nichols* and *Mr. A. A. Smith.*

Mr. Justice Benson delivered the opinion of the court.

1. The first assignment of error relates to the overruling of the demurrer. A careful examination of the complaint, set out in the statement *supra,* convinces us that the allegations are ample to state a cause of suit. Everything that is required to be contained in a valid lien is therein alleged, and the further allegation that a notice containing the same facts had been duly filed and recorded and that the debt was still unpaid.

The second assignment is to the effect that the evidence fails to show who created the obligations mentioned in the complaint, but the latter clearly alleges that the claimant was employed by the defendant corporations, acting through one R. R. McGaughey, the

duly authorized agent for such purpose, and the stipulation of facts concedes that the plaintiff was employed by the Highland Development Company, as lessee, through McGaughey, as such agent.

2. The third assignment attacks the sufficiency of the lien notices because they do not segregate the demand for overtime work; but we do not recall, neither has our attention been directed to, any statutory provisions requiring such segregation. The statute (Section 7445, L. O. L.) prescribes the contents of the notice thus:

"A true statement of his demand, after deducting all just credits and offsets, with the name of the owner or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged with such lien sufficient for identification."

All these requirements are fully complied with in the notices sued upon.

3. The next and last assignment is based upon appellant's contention that the trust deed or mortgage is prior in time and superior to the plaintiff's liens. Appellant, under this assignment, contends that the title of the act under which the liens are claimed is insufficient to sustain the section thereof giving laborers and materialmen a preference. The original act was passed by the legislature in 1891, the title reading thus:

"An act for securing liens for laborers on mining claims, and materialmen and prescribing the manner of their enforcement": Laws of 1891, p. 76.

This act did not contain any provision for preferring such claims, and in 1907 the act was amended under a title reading as follows:

"An act to amend Sections 5668, 5669, 5670, 5671, and 5672, of Bellinger and Cotton's Annotated Codes and Statutes of Oregon, and providing for liens in favor of any person performing labor in or upon, or furnishing material or supplies, in or for the development or operation of any mine, lode, mining claim or deposit, yielding or containing coal, metal or mineral of any kind, or on any road, tramway, trail, flume, ditch, or pipe-line, building, structure or superstructure, in, upon, or used in connection with such mine, lode, deposit or mining claim, or for furnishing or transporting material or supplies to such mine, lode, deposit, mining claim, building, structure or superstructure, used in the operation or development thereof, or for labor performed in transporting material, or the product from such mine, lode, mining claim or deposit, prescribing duties of persons claiming exemptions therefrom, and providing penalties for the enforcement of the provisions of the act and regulating the priority of such liens, and providing the manner for the foreclosure of such liens": Laws 1907, p. 293.

This amendment gives to such liens a priority over all other claims against the property which is subject to the liens, and the title sufficiently expresses the purpose. The act was again amended in 1911 under a title reading thus:

"An act to amend Section 7447 of Lord's Oregon Laws, to provide for the priority of mortgages and for the posting and recording of the same": Chapter 141, Laws 1911.

It does not require any serious argument to show that the titles of the acts of 1907 and 1911 are quite sufficient to comply with the constitutional requirement.

4. If we comprehend counsel's further contention, it is that the act deprives the mortgagee of his property right, without due process of law, in that it enables

the owner of the mine, after mortgaging it, to contract debts for labor and materials which may absorb, by reason of the preference, all the security. It must be remembered that the act of 1907 became a law before appellant's mortgage contract was executed. In the case of *Provident Inst.* v. *Jersey City,* 113 U. S. 506 (28 L. Ed. 1102, 5 Sup. Ct. Rep. 612), Mr. Justice BRADLEY, speaking for the court, says:

"When the complainant took its mortgages, it knew what the law was; it knew that, by the law, if the mortgaged lot should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien on the lot. It chose to take its mortgages subject to this law; and it is idle to contend that a postponement of its lien to that of the water rents, whether after-accruing or not, is a deprivation of its property without due process of law."

We might multiply citations of like tenor, but we deem it unnecessary. Our attention has not been called to any converse authority.

5. We note, however, that the decree of the trial court gives plaintiffs a personal judgment against the Highland Gold Mines Company, which is clearly an error.

The decree of the trial court is therefore modified to the extent of eliminating such personal judgment, and is affirmed as to the remainder.

MODIFIED.  REHEARING DENIED.