Argued May 7, modified May 29, 1917.

## BISHOP *v.* HENRY.

(165 Pac. 237.)

**Mechanics' Liens—Mines and Minerals—Nature of Lien.**

1. A mechanic's or miner's lien is a creation of the statute, which must be looked to for the right to file any such lien.

[As to validity of mechanics' lien laws, see note in **Ann. Cas.** 1912C, 339.]

**Mines and Minerals—Claim of Lien—Ownership of Property.**

2. Section 7445, L. O. L., requiring every laborer or materialman claiming a lien on a mine, etc., to file a claim, containing a statement of his demand, with the name of the owner or reputed owner, if known, and the name of the person by whom he was employed, or to whom he furnished the materials, is complied with by a statement, that the person against whom the lien is claimed is the owner and reputed owner, or by a statement in the alternative that a designated person is the owner or reputed owner.

**Mines and Minerals—Claim of Lien—Ownership of Property.**

3. Under Section 7445, L. O. L., the claim of lien need not state the name of the owner when such owner is not known.

**Judgment—Conclusiveness—Persons not Parties.**

4. H., the daughter of a person formerly owning an interest in mining claims, obtained letters of administration, and with the consent of defendant, who also owned an interest, entered into possession for the purpose of working the property, and representing the interest of the estate. Defendant then made no claim that the estate had no interest. A controversy having arisen, H. abandoned the administration of the estate, and she and her associates filed relocation notices, and obtained supplies and labor from persons who believed her and her associates to be the owners of the claim. Afterwards defendant brought suit and obtained a decree declaring him the sole owner of all the claims as against H. and her associates. *Held* that, as against the persons furnishing labor and supplies and claiming liens, who were not parties to the suit, the decree took effect as of its date, and did not determine their rights.

**Mines and Minerals—Liens—Consent of Owner.**

5. As H. and her associates went into possession with defendant's permission, he should have posted notices as provided by Section 7444, L. O. L., in the case of owners of a mine worked by lessees or by persons other than the owner, if he desired to prevent liens attaching to the claims.

**Mines and Minerals—Liens—Claim of Lien.**

6. Lien notices stating that H. and her associates were the agents of the owner of the claim and were the owners and reputed owners thereof were sufficient without naming defendant; as Section 7445, L. O. L., requiring the name of the owner or reputed owner, "if known," was apparently intended to apply to such a case where title in fee was in the government, and neither party had much more than a possessory right.

**Mines and Minerals—Liens—Enforcement—Attorney's Fees.**

7. In a suit to foreclose mining liens for labor performed and materials and supplies furnished by plaintiff and by other persons who had assigned their claims to plaintiff, it was immaterial whether reasonable attorney's fees should be allowed for all the claims in the aggregate or singly.

From Baker: Gustav Anderson, Judge.

Suit to foreclose mining liens by F. W. Bishop against Susie Norwood Henry, Steve Chaplin, Grace

Carmalt, A. W. Eastham, George W. Paris, George Hansell, Joe Kingsbury and R. C. Crawford, for materials, supplies and labor upon a certain mill and mining claims. The court below decreed a lien upon the mill and the real property but refused any lien as to the mining claims. Plaintiff and defendant, Kingsbury, appeal. Modified.

In Banc. Statement by MR. JUSTICE BEAN.

This is a suit to foreclose certain quartz mining liens on what is commonly known as the Norwood mines. Those claimed by plaintiff are for labor performed and materials and supplies furnished by him and his assignors between March 1 and November 3, 1913. Defendant Kingsbury claims a lien for services commenced in 1908 and continued until November 3, 1913. The court decreed a lien upon a certain mill upon the premises but denied any upon the mining claims. Plaintiff and defendant Kingsbury appealed.

A brief statement of the facts leading up to this controversy is as follows: In 1893 H. W. Norwood made amended locations of three of the mining claims, the Keystone, Empire and Amadore. His wife, Cora S. Norwood, made amended locations of three others, the Snowflake, Lilly and May Flower. The Lilly, Amadore and another, the Nettie May, were conveyed to defendant Crawford. Afterwards these were all known as the Keystone mines for a time. Mr. and Mrs. Norwood and Mr. Crawford each claimed a one-third interest therein and developed the claims in common as a group. Crawford advanced money to the Norwoods upon this arrangement. Mr. Norwood died, and in 1903 Mrs. Norwood executed two mortgages covering her interest in the premises. These were foreclosed in 1904 and the property sold to defendant

A. W. Eastham, trustee. In 1908 defendant, Susie Norwood Henry, a daughter of H. W. Norwood, went to Baker County where she applied for letters of administration of his estate which were granted. She understood and represented that three of the claims in question belonged to his estate. She consulted with defendant Crawford who made no claim to the contrary and who believed that the Norwoods still owned an interest in the mines. With his permission she and Grace Carmalt entered into possession of the premises, moving into a cabin thereon, for the purpose of working the property and representing the one-third interest belonging to the Norwood estate. It was mutually understood that Crawford was to continue his possession, represent his one-third interest, that all were to co-operate and work the mines as a group, and that each had a one-third interest therein respectively. This plan was continued until a controversy arose in 1909 when Crawford presented a claim against the Norwood estate for assessment work done on the mines for it which was disallowed. During that year objections being made by Crawford to the final settlement of the estate, Susie Norwood Henry abandoned the administration thereof, and she and her associates on different dates filed relocation notices upon the quartz claims embraced in the Keystone group, and also located other claims. These were afterwards known as the Norwood mines. So far as the county records showed Susie Norwood Henry and her associates were the owners of the claims. Early in the summer of 1913 the last-named claimants commenced the construction of a mill upon the premises and requested and obtained from plaintiff, a hardware merchant in Baker, and his assignees, other merchants, credit for hardware, merchandise, supplies, meat, etc.,

for about thirty days, until the mill could be operated
and returns realized. Mrs. Henry and Grace Carmalt
resided upon the mining claims, were reputed to be and
were believed by these merchants to be the owners
thereof. Defendant Crawford lived about a quarter
of a mile from the mines and, as he states, could see
what was being done thereon. The mill was built and
run for a short time. Meanwhile Crawford had suc-
ceeded to the interest of A. W. Eastham in the mines,
the date of which is not clearly indicated by the record,
it probably being developed in the suit hereafter men-
tioned. After arrangements were made, a considerable
portion of the supplies furnished to the mines and the
labor performed thereon, Crawford commenced a suit
on July 26, 1913, against Susie Norwood Henry, Grace
Carmalt, Steve Chaplin and A. W. Eastham, trustee,
in which a decree was entered August 31, 1914, declar-
ing that the claims were not subject to relocation by
Susie Norwood Henry and her associates, and that
as to them Crawford was the sole owner of all the
claims constituting the Keystone group. The findings
of fact and conclusions of law of the Circuit Court in
that suit were introduced in evidence, but not the
whole record. It appears that Norwood's interest as
well as that of Mrs. Norwood had been conveyed.

MODIFIED.

For appellants there was a brief over the names of
*Mr. Orville B. Mount* and *Mr. A. A. Smith,* with an
oral argument by *Mr. Mount.*

For respondent, R. C. Crawford, there was a brief
and an oral argument by *Mr. Charles H. McColloch.*

No appearance for other respondents.

MR. JUSTICE BEAN delivered the opinion of the court.

Crawford resists the liens sought to be foreclosed in this suit begun November 26, 1913. He consented to the removal of the mill which has been sold for $500, and a portion of the proceeds are in the hands of the county clerk. The question involved herein relates to the mining claims. The several liens were filed to secure payment for materials and supplies furnished and labor performed in the development of the mines. The lien notices were similar. In that of Hans C. Olson it is stated in part thus:

"That the said mining claims are known as the Norwood group of mining claims and are situated about eight miles northeast of the city of Baker; that the same are contiguous and are worked through common shafts, tunnels, excavations and workings and by means of one mill or ore reduction works; that said labor so performed was upon said Norwood group of mining claims above described, and upon that certain five-stamp mill situated upon said mining claims, all of which said mill, mill buildings, structures and machinery being situated upon the said Norwood group of mining claims and used in the working and mining of the same; that the said Susie Norwood Henry, Grace Carmalt and Steve Chaplin were the agents of the owners of said mining claims, mill, structures and machinery and hired this claimant to perform the work, labor and services aforesaid and the said Susie Norwood Henry, Grace Carmalt and Steve Chaplin are the owners and reputed owners of said mining claims hereinabove described and of said mill, structures and machinery, and caused said work and labor to be performed."

In one or two of the lien notices the name of A. W. Eastham, trustee, is included as owner.

It is contended by defendant Crawford: (1) That the lien notices were not effective and do not support

the liens for the reason that the name of R. C. Crawford, who was afterwards declared to be the sole owner, was not stated therein; and (2) that Crawford never authorized the expenditure upon the mines. Section 7444, L. O. L., provides in part as follows:

"Every person who shall perform labor upon, or furnish material for the working or development of any mine, * * and any person who shall do work or furnish material for any road, tramway, train (trail), flume, ditch or pipe line, building, structure or superstructure used for, or in connection with the working or development of any such mine, * * and any person who shall perform labor or service in freighting or packing any material or supplies for the use, working or development of any such mine, * * and any person who shall furnish any provisions, materials or supplies for the working or development of any such mine, * * structure or superstructure, shall have a lien on such mine * * to secure to him the payment for the work or labor done, or material furnished, * * provided, that when two or more mines, lodes, mining claims or deposits are owned or claimed by the same person or persons, and worked through a common shaft or tunnel, * * then all the mines, * * shall, for the purpose of this act, be deemed one mine; * * and provided further, that this section shall not be deemed to apply to the owner or owners of any mine, * * when the same shall be worked by a lessee or lessees, or by any person or persons other than the owner; provided further, that the owner or owners * * post, or cause to be posted, * * a notice in writing, * * stating the name or names of the lessees, or other person or persons other than the owner operating said property, and that the owner or owners thereof will not be responsible for any debt or debts contracted by the lessee or lessees, or other person or persons other than the owner, in connection with the working, operation or development of such property. * * The failure of any owner or owners of such property to post the notices above provided for, and secure the proper recording

thereof, shall be deemed conclusive proof of the consent of such owner or owners that his or their interest in such mine shall be subject to any lien filed under the provisions of this act.''

Section 7445, L. O. L., provides in substance that it shall be the duty of every laborer or materialman claiming a lien, within sixty days after he has ceased to labor or furnish materials therefor, to file with the proper county clerk a claim containing a true statement of his demand, after deducting all just credits and offsets—

''with the name of the owner or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged.''

1-3. A mechanic's or miner's lien is a creation of the statute to which we must look for the right to file any such lien: 2 Snyder on Mines, § 1705. The provision of the statute that the claim of lien shall state the name of the owner or reputed owner, if known, is complied with by a statement that the person against whom a lien is claimed is the owner and reputed owner. A statement in the alternative that a designated person is the owner or reputed owner is also sufficient under such a statute: 2 Jones on Liens (3 ed.), § 1401; *Gordon* v. *Deal,* 23 Or. 153 (31 Pac. 287); *Haines Com. Co.* v. *Grabill,* 78 Or. 375, 381 (152 Pac. 877); *Arata* v. *Tellurium Gold & Silver Min. Co.,* 65 Cal. 340 (4 Pac. 195); *Abelman* v. *Myre,* 122 App. Div. 470 (106 N. Y. Supp. 978); *McPhee* v. *Litchfield,* 145 Mass. 565 (14 N. E. 923, 1 Am. St. Rep. 482); *Minor* v. *Marshall,* 6 N. M. 194 (27 Pac. 481). Our statute contemplates that in certain cases the name of the owner may not be known, and in such event it is unnecessary that the notice contain the same: 2 Jones on Liens (3 ed.), § 1401.

4, 5. There is no claim in this suit that Crawford posted any notice of nonliability within the purview of the statute. His main reliance is based upon the decree of August 31, 1904. As to the claimants who were not parties to that suit, the decree is analogous to a foreclosure of the former claims, other than his own, and took effect as of that date. It does not determine the rights of these lien claimants which were created before that time and were not foreclosed nor affected. At the commencement of their connection with the mines Susie Norwood Henry and Grace Carmalt went into possession thereof for the purpose of working the properties and representing the one-third interest supposed to belong to the Norwood estate. This was all done with the consent and acquiescence of defendant Crawford. In so far as these claimants are concerned the authority given by Crawford and his sanction for these parties to work the mine was of just as much force as though he had leased the property to Mrs. Henry and her associates and executed a written lease therefor. Had he desired not to become liable for any work done upon these mines by the parties whom he let into possession, he should have posted notices as provided by the statute: Seé *Haines Com. Co.* v. *Grabill,* 78 Or. 375 (152 Pac. 877). Crawford's position is entirely different from what it would be had the parties incurring the indebtedness entered into possession of the mines without his sanction or authority: *Loud* v. *Gold Ray Realty Co.,* 72 Or. 155 (142 Pac. 785); *Post* v. *Fleming,* 10 N. M. 476 (62 Pac. 1087); *Hamilton* v. *Delhi Min. Co.,* 118 Cal. 148 (50 Pac. 378); 27 Cyc. 772.

6. In *Bitter* v. *Mouat Lumber & Inv. Co.,* 10 Colo. App. 307 (51 Pac. 519), it was held that a lien claimant can be charged only with knowledge of the ownership of

property as apparent upon the public records. In equity and good conscience defendant Crawford should not now be allowed to claim that Mrs. Henry and Grace Carmalt were not the owners, rightfully in possession of, and working the claims in suit, when he permitted them to hold out to the world that they were the rightful owners thereof. He stood idly by from 1907, when he allowed them to take possession of the mines, until 1915, when most of the indebtedness for which liens are claimed was incurred. Then, as he states, in July, 1913, or somewhere along there, he concluded that he owned all the mines. Prior to that time he claimed only a one-third interest. As to these lien claimants the die was cast before Crawford brought his suit: See Bigelow on Estoppel (2 ed.), p. 453. By a tardy suit which became effectual in August, 1914, he should not be allowed to defeat the claims of those who in good faith extended credit on account of the mines to which were charged merchandise and supplies furnished in the development thereof. Our statute directing that a notice of lien shall state the name of the owner or reputed owner of the property sought to be charged, if known, seems to have been enacted for just such a case as this where the title in fee is in the United States government and neither party has much more than a possessory right to the claims. The lien notices, the complaint and the proof are in conformity with the statute and are sufficient to sustain the liens: 13 Enc. Pl. & Pr., p. 969 et seq.

Objection is made to the amount of defendant Kingsbury's claim. The work was done during the several years named, and accurate accounts do not appear to have been kept by him. With a little assistance he constructed a 90-foot tunnel, other work was done on the mines, and supplies and materials were transported

in the development thereof. After a careful considera-tion of all the evidence, $1,111.50 is found to be due Kingsbury and allowed him upon his own lien, and the further sum of $228.50, due upon the lien of his as-signor, Hans C. Olson, making a total of $1,340, to-gether with $125, attorney's fees. The claims of plaintiff are approved as found by the trial court.

7. Objection is made to the form of the allowance of attorney's fees for plaintiff. We see no merit in this claim nor any material difference in allowing reasonable attorney's fees for all the claims in the aggregate or singly. The decree of the trial court is modified as herein indicated and the amounts allowed claimants will be declared to be a lien on the mines described in the complaint.                    MODIFIED.