[Civ. No. 4464. First Appellate District, Division One.—February 13, 1923.]

WESTERN WELL WORKS, INC. (a Corporation), Appellant, v. CALIFORNIA FARMS COMPANY et al., Respondents.

[1] MECHANICS' LIENS—TEST BORE FOR WATER WELL—STRUCTURE—CONSTRUCTION OF CODE.—A test bore for a water well drilled under the terms of a contract which provided that if within the depth of a thousand feet sufficient apparent water-bearing strata was encountered which by mutual agreement would justify finishing the well, the bore was to be reamed out and a well sunk, constituted a "structure," under the provisions of section 1183 of the Code of Civil Procedure, entitling the contractor to a lien for the work done and labor, materials, and supplies furnished in drilling the bore.

[2] ID.—OCCUPATION OF LAND—TEST BORE FOR WELL—INFORMATION OF OWNER—NOTICE OF NONRESPONSIBILITY.—Where a test bore for a water well on land owned by a corporation was made under a contract between the occupant of the land and the driller, and the former informed an officer of the corporation that such a test was being made, the information was sufficient to put the corporation upon inquiry as to the nature and extent of the work, and in order to avoid responsibility it was incumbent upon the corporation to give the notice provided by section 1192 of the Code of Civil Procedure.

[3] ID.—DRILLING OF WELL—AREA OF LAND SUBJECT TO LIEN.—In determining what area is subject to a lien for the drilling of a water well the question is not so much as to the amount of land required for the area to be occupied by the well and its appliances, but rather as to the amount of land to be improved or benefited by the creation and use of the well.

1. Mechanic's lien for sinking well, notes, 6 L. R. A. (N. S.) 550; 43 L. R. A. (N. S.) 559.

3. Extent of land to which mechanic's lien will attach, note, 26 L. R. A. (N. S.) 831.

APPEAL from a judgment of the Superior Court of Fresno County. M. F. McCormick, Judge. Reversed.

The facts are stated in the opinion of the court.

Ralph C. McComish and G. L. Aynesworth for Appellant.

Everts, Ewing & Wild and J. R. Fitch for Respondents.

RICHARDS, J.—This action was instituted by the plaintiff for the foreclosure of a mechanics' lien upon two certain sections of land in Fresno County owned by the California Land Company, one of the defendants herein. At the time the work was done, from which, as claimed by plaintiff, the lien arose, the lands sought to be affected thereby were in the possession of the California Farms Company, another defendant herein, which was an unincorporated association of persons of whom the defendant Sherwood Green was a member and officer, having authority to act for such association; and which association was at the time of doing of said work in the possession of a larger tract of land of which said sections were a part under an option to purchase the same from the California Land Company. The work to be done by the plaintiff was set forth in a contract in writing bearing date of February 10, 1920, between it and the California Farms Company and consisted in the sinking of a test bore in search of water-bearing strata upon said sections of land to the depth of 1,000 feet. The contract proceeded to state that "if, within a depth of 1000 feet from the surface of the ground, sufficient apparent water-bearing strata are encountered which by mutual agreement would justify finishing the Well, then we are to ream out the Test Bore and sink a Well at this point, and case the same with 24″ diameter Double 12 Gauge Hard Red Sheet Steel Casing for approximately the first 120 feet, then a Taper Connection from 24″ to 12″ and 12″ diameter Double 12 Gauge Casing for the balance of the distance. . . . After the Casing has been installed, we fill in the annular space between the wall of the hole dug to receive the Casing and the Casing itself with selected washed Gravel,—making and completing what is known as the Western Well Works Inc. Patented Gravel Envelope Well,

constructed under Patent #1289320.'' The contract further embraced the specifications for the well in case the
test bore justified its completion and provided for the
installation of a pump thereon having a capacity of from
1,000 to 2,500 gallons of water per minute. The work
proceeded under this contract to the depth indicated
therein, the plaintiff furnishing all of the derricks, materials,
supplies, and labor for the doing of said work in accordance with the provisions of said contract. The California
Farms Company did not, however, comply with the terms of
its said agreement as to payments nor as to completion
of the well, in consequence of which the plaintiff ceased
operations and in due time filed and recorded its lien for the
labor and materials furnished and used in the prosecution
of the work of making said test bore; and thereafter commenced this action for the foreclosure of its said lien, joining the California Land Company, the California Farms
Company, and Sherwood Green, and certain other persons
alleged to compose said latter association as defendants in
said action. In its complaint the plaintiff, after alleging
the facts as to performance by it of said work under said
contract with the California Farms Company and of the
nonpayment by the latter therefor, proceeded to allege that
the California Land Company had notice and knowledge of
the doing of said work and the furnishing of said labor,
materials, and supplies on and at all times after February
10, 1920, but that said California Land Company never gave
notice by either posting or recordation that it would not be
responsible for said work, labor, materials, or supplies. The
defendants appeared separately and demurred to the sufficiency of the plaintiff's complaint; the California Farms
Company and the defendant Green demurring both generally and specifically and the California Land Company presenting a general demurrer. These demurrers were overruled. The defendant California Farms Company defaulted
by failing to answer after notice. The defendant Sherwood
Green answered denying the making and entering into the
contract by the California Farms Company or himself for
the doing of said work. The California Land Company answered denying practically all of the averments of the complaint save and except the averment that said defendant
claimed the right, title, and interest in said premises sought

to be affected by said lien adverse to the claim of the plaintiff and in that respect alleged itself to be the owner of said premises free and clear of the lien asserted by said plaintiff. It also specifically denied having any notice or knowledge of the doing of said work or of the furnishing of the said labor, materials, or supplies at any time prior to the institution of said action. The cause came on for trial upon the issues thus joined and upon its submission the court made its findings of fact herein and found that the plaintiff had performed the work of drilling the test bore upon the premises in question under the contract with the California Farms Company and as required by the terms of said contract and had furnished the labor, materials, and supplies necessary for said work as provided therein and that no part of the sum to be paid therefor by the said California Farms Company had been paid, save and except the sum of $500 on account thereof, and that in due course the plaintiff had filed its claim of lien upon said two sections of land for the balance remaining unpaid upon said contract. The court further found that no part of said premises sought to be impressed with said lien was necessary for the convenient use and occupation of the improvements placed thereon by said plaintiff, save and except a circle of ground one hundred feet in diameter around the spot where the derrick had been erected above the point where said test bore had been drilled. The court further found that the said test bore to be constructed and actually constructed under the terms of said contract between the plaintiff and the California Farms Company was not a well and did not come within the definition of any of the matters for which a lien is granted under the statutes of the state of California. The court also found that the defendant California Land Company had no notice or knowledge of the doing of said work and furnishing of said labor, materials, or supplies at any time prior to the service upon it of the summons and complaint in this action, and that the said defendant California Land Company never gave any notice, either by posting or recordation, that it would not be responsible for said work, labor, materials, or supplies. As conclusions of law from the foregoing findings of fact the court found that the plaintiff was entitled to a personal judgment against the defendants California Farms Company and Sherwood

Green for the sum of $3,494.86, but that as to the defendant California Land Company it was entitled to judgment that the plaintiff had no lien upon the premises described in its complaint. Judgment was entered accordingly. The plaintiff's motion for a new trial was denied, whereupon it took and prosecutes this appeal.

[1] The primary question presented for our consideration upon this appeal is as to whether or not the test bore for a water well drilled by the plaintiff under the terms of its contract with the California Farms Company constituted such a structure under the provisions of section 1183 of the Code of Civil Procedure as would entitle the plaintiff to a lien for the work, labor, material, and supplies furnished by it in the drilling of said test bore. We are satisfied that the trial court was in error in its finding and conclusion that the doing of said work, furnishing of said labor, materials, and supplies did not come within the terms and provisions of said section of the Code of Civil Procedure so as to entitle the plaintiff to claim a lien therefor upon some portion of the real estate upon or in relation to which said work was prosecuted and said labor, materials and supplies were furnished. Section 1183 of the Code of Civil Procedure in force at the time of the doing of said work provided that "mechanics, materialmen, contractors, subcontractors, artisans, architects, machinists, builders, miners, teamsters and draymen, and all persons and laborers of every class performing labor upon, or bestowing skill or other necessary services, or furnishing materials to be used or consumed in or furnishing appliances, teams and power contributing to the construction, alteration, addition to or repair, either in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, wagon road or other structure, shall have a lien upon the property upon which they have bestowed labor or furnished materials, for the value of such labor done and materials furnished and for the value of the use of such appliances, teams or power, whether at the instance of the owner, or of any other person acting by his authority or under him, as contractor or otherwise." By the terms and specifications of the contract between the plaintiff and the California Farms Company it was provided that the test bore to be sunk by said plaintiff was to be drilled in search

of water-bearing strata and formation and that "if within the depth of a thousand feet sufficient apparent water-bearing strata was encountered which by mutual agreement would justify finishing the well then we are to ream out the test bore and sink a well at this point." The phrase "ream out" the test bore is to be interpreted to mean "to enlarge or dress out, as a hole." (Webster's Dictionary, "ream.") It was thus the clear intent of the foregoing provision of the said contract that the well to be thereafter sunk, if the developments of the test bore should justify it, was to occupy the precise spot and to follow the precise line of the test bore, or, in other words, to constitute an enlargement of the hole made thereby. The undisputed testimony of Mr. Vaughan, president of the Western Well Works, showed that the developments of the test bore were such as to justify the conclusion that a well, if completed according to the specifications of said contract and operated at said point, would have produced in excess of 2,000 gallons of water a minute; and that by the sinking of said test bore about twenty-five per cent of the cost of the completed well would have been contributed. Reading the foregoing provisions of section 1183 of the Code of Civil Procedure in the light of this contract and of the evidence above referred to, the conclusion would seem to be irresistible that the test bore was work of such a character as would reasonably be embraced within the meaning of the word "well" as used in said section. It was, to say the least of it, work which contributed to the construction of such well. That a well is a structure in the sense of said provision of the code would seem to be clear from the authorities. In the case of *Helm* v. *Chapman*, 66 Cal. 291 [5 Pac. 352], it was held that a pit sunk within a mining claim was a "structure." This decision was approved in the case of *Silvester* v. *Coe Q. M. Co.*, 80 Cal. 510 [22 Pac. 217], and was again cited with approval in the case of *Williams* v. *Mountaineer G. M. Co.*, 102 Cal. 134 [34 Pac. 702, 36 Pac. 388], in which latter case the supreme court, in interpreting the meaning of the word "structure" as used in section 1183 of the Code of Civil Procedure, said: "The use of the phrase 'other structure' in the above extract shows that the word 'structure' comprehends all the properties specifically enumerated and is broad enough to include any similar

things constructed should the enumeration prove incomplete.''
The term "well" as modernly used has also been given a
broader signification than that embraced in the definitions
of earlier dictionaries; as, for example, in its use in relation
to boring for oil. In the cases of *Haskell* v. *Gallagher*, 20
Ind. App. 224 [67 Am. St. Rep. 250, 50 N. E. 485], and
*Kanawha* v. *Wenner*, 71 W. Va. 477 [43 L. R. A. (N. S.)
559, 76 S. E. 893], it was held that an oil well was a
structure within the meaning of that term as used in me-
chanic's lien laws. We conclude that the trial court was in
error in its finding and conclusion that the work done and
labor, materials, and supplies furnished by the plaintiff were
not lienable under the provisions of section 1183 of the
Code of Civil Procedure.

[2] The next finding of the trial court, which the appel-
lant assails is its finding that the California Land Company
had no such notice or knowledge of the doing of said work
and the furnishing of said labor, materials, and supplies as
would have required it, as the owner of the premises affected
by said lien, to give the notice provided for in section 1192
of the Code of Civil Procedure in order to avoid responsi-
bility for said work and liability for said lien. The evidence
upon this subject is undisputed and is supplied by the de-
fendant Sherwood Green, who was at the time the secretary
of the California Farms Company. He testified that on
or about the 1st of May, 1920, at which time considerable
progress had been made with said work, he had a conversa-
tion with an officer of the California Land Company at
Boise City, Idaho, the principal place of business of said
corporation. A number of other persons were present, all
of whom were connected with the California Land Com-
pany. He had gone there for the purpose of making a pay-
ment upon the contract of his association with the California
Land Company and obtaining an extension upon said con-
tract and he then there made said payment and procured
such extension. In the course of doing so he discussed with
the persons then present the fact that ''if they didn't give
us an extension we naturally would take those two sections
in which the wells were being drilled, which were sections
22 and 27 under our option, so I know at that time it was
made clear to them that we were doing work and drilling
wells and we talked about taking those two sections if we

didn't get an extension. Section 27 is the section on which the work was being done by the Western Well Works. I discussed with the California Land Company the proposition that we were doing well work on that section." From this uncontradicted evidence but one conclusion can reasonably be drawn. It is that the California Land Company, through its officers, with whom the defendant Green as the authorized representative of the California Farms Company went to Boise City, Idaho, to deal in the matter of obtaining an extension of the contract of his association with said corporation, which extension he then and there obtained, was informed in immediate connection with the obtaining of said extension that work in the nature of drilling a well or wells was then proceeding upon its said land. That such information would be sufficient to put prudent men upon inquiry as to the nature and extent of the work being done upon the property of their corporation we entertain no doubt, in the light of the authorities; and that the defendant California Land Company was bound by the information thus imparted to all that a proper and prudent inquiry would have revealed, the cases fully support. (*Evans* v. *Judson,* 120 Cal. 282 [52 Pac. 585]; *J. E. Gentle & Co.* v. *Britton,* 158 Cal. 328 [111 Pac. 9]; *Perazzi* v. *Doe Estate Co.,* 40 Cal. App. 617 [181 Pac. 398].) This being so it was incumbent upon said corporation as the owner of the premises upon which said work was being done by plaintiff to have given notice under the provisions of section 1192 of the Code of Civil Procedure in order to avoid responsibility for the same. The trial court found that no such notice of nonresponsibility was given by said corporation. It follows that some portion of its said property was subject to the plaintiff's lien.

[3] The foregoing views of this court require a reversal of this judgment with the probable result of a retrial of this cause. In view of this fact but one further comment is necessary upon the findings of the trial court. It relates to the court's finding "that none of said premises is necessary for the convenient use and occupation of the improvements placed thereon by the plaintiff save and except a circle of ground one hundred feet in diameter, including the land upon which the derrick hereafter mentioned was erected, in such manner that said derrick is in the center of said piece

of ground.'' It seems to us that this is altogether too narrow an interpretation to place upon the provisions of the statute permitting a lien to be claimed upon the land upon which the building improvement, well, or structure is to be constructed. Section 1185 of the Code of Civil Procedure in providing for the extent of such lien allows, not only the immediate land occupied by the structure itself, but also ''a convenient space about the same, or so much as may be required for the convenient use and occupation thereof.'' The structure upon which the plaintiff performed the work for which he claims his lien was a well, having, when completed, a capacity of at least 2,000 gallons of water a minute. It was to be an irrigating well, and according to the uncontradicted evidence of Mr. Vaughan would have sufficed for the irrigation of at least one, if not both, of the sections of land upon which it was to be located. In determining what would be a convenient space for the use and occupation of an irrigating well consideration must be given to the reasonable and beneficial use of the waters of the well, since the well is useless without the use and application of its waters upon sufficient land to render an adequate return for the cost of its creation and use. The question is not so much as to the amount of land required for the area to be occupied by the well and its appliances, but rather as to the amount of land to be improved or benefited by the creation and use of the well. This is quite clearly set forth in the case of *Berentz* v. *Belmont Oil Mining Co.,* 148 Cal. 577 [113 Am. St. Rep. 308, 84 Pac. 47], and also in the case of *Hamilton* v. *Delhi Mining Co.,* 118 Cal. 148 [50 Pac. 378], wherein the supreme court says: ''The general theory upon which liens to laborers, mechanics and materialmen are given is that by the labor or use of the material the property has been enhanced in value.'' A good illustration of the application of the rule is to be found in *Mendoza* v. *Central Forest Co.,* 37 Cal. App. 289 [174 Pac. 359], in which a lien was sought to be imposed for work in preparing a tract of land for an irrigation system consisting of ditches, drains, embankments, and the like. The entire tract of land was sought to be affected by the lien. The court says: ''The farm development here contemplated was a finished piece of work composed of integral parts, some of which the statute expressly designates as structures, and

when completed consisted of ditches, drains, embankments, roads, so correlated as to form one harmonious entity designed to accomplish a particular object and constituting a permanent and valuable improvement to the land and necessary to its highest and most profitable uses.'' The supreme court of the United States has given a like application of the principle in the case of *Springer Land Assn.* v. *Ford,* 168 U. S. 513 [42 L. Ed. 562, 18 Sup. Ct. Rep. 170, see, also, Rose's U. S. Notes], involving much the same state of facts and wherein the court said: ''The truth is that what area of land is subject to lien in a given case largely depends on the character of the improvement. The extent of ground proper and necessary to the enjoyment of the building, a wall or a fence would not be the same as that required for or pertaining to an irrigation system, but the principle of determination is the same. This ditch was to expend its waters on this tract and could not be used or operated without it. Each was dependent on the other and both were bound together in the accomplishment of a common purpose. The lien must apply to the entire tract or be confined to the right of way through which it took its course, and to narrow it down to the latter would be to disregard the very terms of the statute.'' In determining the amount of land to be subjected to the lien of the plaintiff in the instant case the trial court should take into account the fact that the mechanic's lien law is to be liberally construed with a view to effecting its purpose. The legislature expressly so declared in the statute amending section 1183 of the Code of Civil Procedure into its present form (Stats. 1911, pp. 1313–1320); and the courts of both this and other jurisdictions have consistently followed the rule of construction thus laid down. (*Mendoza* v. *Central Forest Co., supra; Lindsay* v. *Gunning,* 59 Conn. 296 [11 L. R. A. 553, 22 Atl. 310]; *Montandon* v. *Deas,* 14 Ala. 33 [48 Am. Dec. 84]; *Filston Farm Co.* v. *Henderson,* 106 Md. 335 [67 Atl. 228]; *Hess Flume Co.* v. *La Junta etc. Land Co.,* 63 Colo. 236 [166 Pac. 246].) The foregoing views are for the direction of the trial court upon a retrial of this cause.

Judgment reversed.

Tyler, P. J., and St. Sure, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 12, 1923.

All the Justices concurred.